UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| BATTLE BORN INVESTMENTS COMPANY, LLC, <br><br> Plaintiff, <br><br> v. <br><br> DEPARTMENT OF JUSTICE, <br><br> Defendant. | Civil Action No. 24-0067 (BAH) |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT THEREOF**

## **TABLE OF CONTENTS**

**BACKGROUND** .................................................................................................................. 1

    I.     Silk Road Black Market ................................................................................................ 1

    II.    Individual X Steals from Silk Road .............................................................................. 2

    III.   Civil Forfeiture Proceedings ........................................................................................ 3

    IV.   FOIA Request .............................................................................................................. 4

**LEGAL STANDARD** ........................................................................................................ 5

**ARGUMENT** ...................................................................................................................... 6

    V.    Exemptions 6 and 7(C) ................................................................................................ 6

    VI.   Exemption 7(F) ............................................................................................................ 9

**CONCLUSION** ................................................................................................................. 10

# TABLE OF AUTHORITIES

**CASES**

*ACLU v. Fed. Bureau of Prisons*,
Civ. A. No. 20-2320 (RBW), 2022 WL 17250300 (D.D.C. Nov. 28, 2022).................................. 9

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)................................................................................................................ 5

*Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*,
854 F.3d 675 (D.C. Cir. 2017).............................................................................................. 6, 7

*Elec. Priv. Info. Ctr. v. Dep't of Just.*,
18 F.4th 712 (D.C. Cir. 2021) ............................................................................................... 6, 8

*Evans v. Fed. Bureau of Prisons*,
951 F.3d 578 (D.C. Cir. 2020)................................................................................................ 6

*Fund for Const. Gov't v. Nat'l Archives & Recs. Serv.*,
656 F.2d 856 (D.C. Cir. 1981)................................................................................................ 7

*Groenendal v. Exec. Off. for U.S. Att'ys*,
Civ. A. No. 20-1030 (DLF), 2024 WL 1299333 (D.D.C. Mar. 27, 2024) ........................... 7, 8, 10

*Jordan v. Drug Enf't Admin.*,
Civ. A. No. 22-2195 (JEB), 2023 WL 2809132 (D.D.C. Apr. 6, 2023) ......................................... 5

*Jud. Watch, Inc. v. Nat'l Archives & Recs. Admin.*,
876 F.3d 346 (D.C. Cir. 2017)................................................................................................ 7

*Nat'l Archives & Recs. Admin. v. Favish*,
541 U.S. 157 (2004)................................................................................................................ 7

*Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*,
740 F.3d 195 (D.C. Cir. 2014)................................................................................................ 9

*Reps. Comm. for Freedom of the Press v. FBI*,
3 F.4th 350 (D.C. Cir. 2021) .............................................................................................. 8, 10

*Roth v. Dep't of Just.*,
642 F.3d 1161 (D.C. Cir. 2017).............................................................................................. 6

*Sussman v. Marshals Serv.*,
494 F.3d 1106 (D.C. Cir. 2007).............................................................................................. 7

*United States v. Approximately 69,370 Bitcoin*,
Civ. A. No. 20-7811, 2022 WL 888655 (N.D. Cal. Mar. 25, 2022) ......................................... 1, 4, 9

*United States v. Battle Born Invs. Co., LLC*,
No. 22-16348, 2023 WL 5319258 (9th Cir. Aug. 18, 2023) ....................................................... 3, 4

**STATUTES**

5 U.S.C. § 552 ................................................................................................................................ 1, 6, 9

**RULES**

Fed. R. Civ. P. 56 ........................................................................................................................... 1, 5

The United States Department of Justice ("Defendant" or "Department"), parent agency of the Executive Office for United States Attorneys ("EOUSA"), through undersigned counsel, respectfully moves for summary judgment on Battle Born Investments Company LLC's ("Plaintiff's") Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, claim under Federal Rule of Civil Procedure ("Rule") 56 and Local Rule 7(h).

## BACKGROUND

### I. Silk Road Black Market

"From 2011 until October 2013, when it was seized by law enforcement, Silk Road was utilized by thousands of drug dealers and other vendors to distribute hundreds of kilograms of illegal drugs and other unlawful goods and services to well over 100,000 buyers, and to launder hundreds of millions of dollars derived from these illegal transactions." *United States v. Approximately 69,370 Bitcoin*, Civ. A. No. 20-7811, 2022 WL 888655, at *1 (N.D. Cal. Mar. 25, 2022).

"The only form of payment accepted on Silk Road was Bitcoin." *Id.* "During its operation, Silk Road generated sales revenue totaling over 9.5 million Bitcoin, and collected commissions from these sales totaling over 600,000 Bitcoin." *Id.* "Silk Road used a so-called 'tumbler' to process Bitcoin transactions in a manner designed to frustrate the tracking of individual transactions through the Blockchain and thereby assist with the laundering of criminal proceeds." *Id.*

"The creator of Silk Road, Ross Ulbricht, was arrested in San Francisco on October 1, 2013, and charged in the Southern District of New York with narcotics trafficking conspiracy, computer hacking conspiracy, and money laundering conspiracy." *Id.* "That same day, law enforcement took down the Silk Road website and seized its servers, including all Bitcoins contained in wallets residing within them." *Id.* "The following day, the government filed a civil

action in the Southern District of New York seeking, among other things, forfeiture of the Silk Road hidden website, any and all Bitcoins contained in wallet files residing on Silk Road servers, and all property traceable thereto." *Id.* "A judgment and order of forfeiture was entered in that action in 2014." *Id.*

"In February of 2015, a federal jury convicted Ulbricht on seven counts including conspiracy to distribute narcotics and money laundering." *Id.* at *2. "He was ultimately sentenced to double life imprisonment plus forty years, without the possibility of parole." *Id.*

## II. Individual X Steals from Silk Road

"In 2020, law enforcement officers used a third-party bitcoin attribution company to analyze Bitcoin transactions executed by Silk Road." *Id.* "They saw that on May 6, 2012, [fifty-four] transfers were made from Bitcoin addresses controlled by Silk Road to two Bitcoin addresses, abbreviated as 1BAD and the 1BBq." *Id.* "These [fifty-four] transactions were not noted in the Silk Road database as vendor or Silk Road employee withdrawals and therefore appeared to represent Bitcoin that was stolen from Silk Road." *Id.*

"Nearly a year later, most of the Bitcoin at 1BAD and 1BBq was transferred to an address abbreviated as 1HQ3." *Id.* "Other than a relatively small transfer out in 2015, the nearly 70,000 Bitcoin remained at 1HQ3 until its seizure by the government in late 2020." *Id.* "During that time, its value grew from approximately $14 million to over $3.5 billion." *Id.*

"According to an investigation conducted by the Criminal Investigation Division of the Internal Revenue Service and the U.S. Attorney's Office for the Northern District of California, Individual X was the individual who hacked into Silk Road and moved the cryptocurrency to 1BAD and 1BBq, and subsequently to 1HQ3." *Id.* "The investigation further revealed that Ulbricht became aware of Individual X's online identity and threatened Individual X for return of the cryptocurrency to Ulbricht." *Id.* "Individual X did not return the cryptocurrency." *Id.*

2

### III.     Civil Forfeiture Proceedings

On November 3, 2020, "Individual X signed a Consent and Agreement to Forfeiture with the U.S. Attorney's Office, Northern District of California in which he or she consented to the forfeiture of the subject Bitcoin." *Id.* "That same day, the government took custody of the Bitcoin from 1HQ3." *Id.* Two days later, on November 5, 2020, the United States filed a complaint for forfeiture in the United States District Court for the Northern District of California to seize the subject Bitcoin. *See* Complaint, *United States v. Approximately 69,370 Bitcoin*, Civ. A. No. 20-7811 (N.D. Cal. Nov. 5, 2020), ECF No. 1.

Numerous parties filed a claim of ownership to the subject Bitcoin; three are relevant for this case: (1) First 100, LLC; (2) 1st One Hundred Holdings, LLC; and (3) Battle Born Investments, who is Plaintiff in this FOIA case. *See United States v. Battle Born Invs. Co., LLC*, No. 22-16348, 2023 WL 5319258, at *1 (9th Cir. Aug. 18, 2023). Their claims to the subject Bitcoin arose out of a Chapter 7 bankruptcy action filed in the United States Bankruptcy Court for the District of Nevada under case number 17-14166. *Id.* The debtor in the bankruptcy action was a person named Raymond Ngan. *Id.* In March 2017, two of the parties – First 100 and 1st One Hundred Holdings – jointly and severally obtained a $2,211,039,718.46 judgment against Ngan. *Id.* In March 2018, the third party – Battle Born Investments – entered into an agreement to purchase from the Chapter 7 trustee all assets of the bankruptcy estate. *Id.*

In the civil forfeiture proceedings (as opposed to the bankruptcy action), the three parties filed claims asserting that the bankruptcy action "was filed by an individual who, upon information and belief, is, or is associated with, Individual X." *Id.* Thus, both First 100 and 1st One Hundred Holdings claimed that they were innocent owners of all of the subject Bitcoin for the forfeiture proceeding pursuant to their status as judgment creditors. *Id.* Battle Born Investments asserted it

3

was an innocent owner of all of the subject Bitcoin from the forfeiture proceeding pursuant to its status as the purchaser of the bankruptcy estate. *Id.*

The United States moved to strike the parties' claims in the civil forfeiture case, and the court granted the motion:

> Apart from sheer speculation that Ngan may have had some association with Individual X, Battle Born can offer nothing to suggest how Ngan would have come into ownership of the Bitcoin in 1HQ3 wallet, much less lawful ownership that would have made the Bitcoin part of the bankruptcy estate. . . . Because it has not pleaded facts—as opposed to conclusions—that plausibly put the 1HQ3 wallet into the bankruptcy estate it purchased, the motion to strike must be granted.

*Approximately 69,370 Bitcoin*, 2022 WL 888655, at *5.

On August 18, 2023, the Ninth Circuit affirmed:

> Reviewing the record de novo, we conclude that the Battle Born parties failed to carry their burden to establish some evidence, beyond a mere assertion, of ownership of the Defendant Property, from which a reasonable and fair-minded jury could find that they have standing. In addition to their verified claims, the Battle Born parties rely on five declarations to establish evidence of ownership, i.e., that Ngan owned the bitcoin in 1HQ3 prior to seizure so that it is now part of Ngan's bankruptcy estate. At best, their verified claims and declarations establish that the Battle Born parties have ownership rights to the bankruptcy estate of Ngan, who they believe is or is associated with Individual X. . . . They provide nothing beyond speculation that Ngan had some association with Individual X, and they offer nothing to suggest how Ngan would have come into ownership of the bitcoin in 1HQ3. Given the lack of evidence in the record, even without considering the government's declaration, the district court correctly held that no reasonable jury could find that the Battle Born parties have a colorable claim of ownership as to the Defendant Property sufficient to confirm standing.

*Battle Born*, 2023 WL 5319258, at *2; *see also id.* at *3 ("The district court did not err by requiring the Battle Born parties to connect their ownership interest to that of Individual X.").

## IV. FOIA Request

About two months after the Ninth Circuit issued its opinion, on October 19, 2023, Plaintiff submitted the following FOIA request:

> On behalf of Battle Born Investments Company, LLC, I hereby request under the Freedom of Information Act copies of records and documents showing (1) the name

4

of the person who signed a Consent and Agreement to Forfeiture with the U.S. Attorney's Office, Northern District of California, on or about November 3, 2020, concerning a cryptocurrency wallet referred to as 1HQ3 in *United States v. Approximately 69,370 Bitcoin, et al.*, Case No. 3:20-cv-7811-RS (N.D. Cal.); (2) the name of any person believed to have owned, possessed, or controlled that wallet; and (3) the name of the person referred to as "Individual X" in that case.

FOIA Req., ECF No. 15-3; *see also* Compl. ¶ 13, ECF No. 1.

Plaintiff filed suit on January 8, 2024. Compl., ECF No. 1. The parties have conferred and agree that the sole issue is the identity of Individual X referenced in one document: the November 3, 2020, Consent and Agreement to Forfeiture referenced above.[1]

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Id.* Although all inferences are taken in a light most favorable to the nonmoving party, a party opposing summary judgment may not rest on allegations or denials from its pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 255-56.

---

[1] It is questionable whether Plaintiff submitted a valid FOIA request, as the request seems to seek an answer to a question – who is Individual X? – rather than documents. *Jordan v. Drug Enf't Admin.*, Civ. A. No. 22-2195 (JEB), 2023 WL 2809132, at *3 (D.D.C. Apr. 6, 2023) (finding request seeking identity of DEA agent and date investigation was opened was not valid FOIA request because it sought answers to questions not documents). That said, the parties have been able to narrow the issue, so Defendant does not make the argument in this brief.

Additionally, in the parties' April 15, 2024, Joint Status Report, Defendant stated that it was withholding all of the document under various exemptions. *See* Joint States Report (Apr. 15, 2024), ECF No. 12. Defendant has since determined that it had previously released the document with redactions in response to a prior FOIA request. Thus, Defendant is no longer withholding all of the document, but only parts of it under Exemptions 6, 7(C), and 7(F).

5

In a FOIA case, summary judgment may be granted "on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 584 (D.C. Cir. 2020) (citation omitted).

## ARGUMENT

**V.      Exemptions 6 and 7(C)**

Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy[.]") 5 U.S.C. § 552(b)(7)(C). When information is claimed to be exempt from disclosure under both Exemption 6 and 7(C), courts "focus . . . on Exemption 7(C) because it provides broader privacy protection than Exemption 6 and thus establishes a lower bar for withholding material." *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Just.*, 854 F.3d 675, 681 (D.C. Cir. 2017). So, when agencies rely on both Exemptions 6 and 7(C) for the same material, the Court need not "consider Exemption 6 separately[.]" *Roth v. Dep't of Just.*, 642 F.3d 1161, 1168 (D.C. Cir. 2017).

As a threshold matter, the agency invoking Exemption 7(C) must demonstrate the withheld records were "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). If this threshold is cleared, the agency must demonstrate that "(1) disclosure could 'reasonably be expected to constitute an unwarranted invasion of privacy' and (2) the 'personal privacy interest' is not 'outweighed by the public interest in disclosure.'" *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 18 F.4th 712, 718 (D.C. Cir. 2021) (quoting *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 160

(2004)). Once the agency shows that the "privacy concerns addressed by Exemption 7(C) are present," the party seeking disclosure must show "that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake," and that "the information is likely to advance that interest." *Id.* Further, "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens' right to be informed about what their government is up to." *Groenendal v. Exec. Off. for U.S. Att'ys*, Civ. A. No. 20-1030 (DLF), 2024 WL 1299333, at *9 (D.D.C. Mar. 27, 2024) (quoting *Sussman v. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007) (cleaned up)).

The D.C. Circuit has held that "individuals have an obvious privacy interest cognizable under Exemption 7(C) in keeping secret the fact that they were subjects of a law enforcement investigation." *Id.* (quoting *CREW v. Dep't of Just.*, 854 F.3d 675, 682 (D.C. Cir. 2017). "[W]here individuals have been investigated but not charged with a crime," disclosure of material properly exempt under Exemption 7(C) "represents a severe intrusion on the privacy interests of the individual[ ] in question." *Jud. Watch, Inc. v. Nat'l Archives & Recs. Admin.*, 876 F.3d 346, 349 (D.C. Cir. 2017) (quoting *Fund for Const. Gov't v. Nat'l Archives & Recs. Serv.*, 656 F.2d 856, 866 (D.C. Cir. 1981)).

Here, in line with D.C. Circuit precedent, the Agency determined that "Individual X" had a significant privacy interest in keeping his or her identity secret, considering how he or she was the subject of a law enforcement investigation. *See* Hudgins Decl. ¶ 14. Also, in this instance, the document requested by Plaintiff would identify an individual, who is accused of theft of several thousand Bitcoins that had a value of over $1 billion when seized. *Id.* ¶ 25. The Bitcoin was stolen by "Individual X" from addresses at Silk Road, the most sophisticated and extensive criminal marketplace on the Internet. *Id.* ¶ 26. Thus, this threat of harm is heightened when the goods are

believed to be stolen proceeds from criminal activity. *Id.* ¶ 27. Moreover, disclosing the identity of targets of law enforcement investigations "can subject those identified to embarrassment and potentially more serious reputational harm," and "the mention of an individual's name in a law enforcement file . . . carries a stigmatizing connotation[.]" *Elec. Priv. Info. Ctr.*, 18 F.4th at 719. During the administrative proceedings, Plaintiff stated that "[n]o FOIA exemption authorizes the Government to conceal the identity of a person who forfeited, owned, possessed, or controlled the wallet worth approximately $2 billion," and that "[t]here is no valid privacy expectation," but such a position ignores longstanding binding D.C. Circuit precedent.

Further, there is no public interest that would outweigh the privacy interest of Individual X in withholding his or her identity. Throughout these proceedings, Plaintiff has repeatedly referred to a press release where the United States acknowledged that it filed a civil action to forfeit the cryptocurrency that Individual X stole, but the United States never released the name of the person identified as Individual X in the press release or otherwise in court proceedings. Plaintiff has not provided any justification that there is a public interest in the identity of Individual X. In truth, it appears that the main reason for this FOIA request is Plaintiff's private interests. As described above, Plaintiff is trying to tie the bankruptcy proceedings to Individual X and thus have standing in the civil forfeiture proceedings to pursue a claim for the billions of dollars in seized cryptocurrency.

Lastly, the context and purpose of the information sought but withheld manifestly satisfies the foreseeable harm standard. *Groenendal*, 2024 WL 1299333, at *10 (finding foreseeable harm under Exemptions 6 and 7(C) based on context and purpose of withholdings even though agency did not expressly address foreseeable harm); *see also Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 372 (D.C. Cir. 2021) ("The very context and purpose of those communications

8

bearing on sensitive undercover operations in the midst of a policy crisis make the foreseeability of harm manifest.").

## VI. **Exemption 7(F)**

Exemption 7(F) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to endanger the life or physical safety of any individual[.]" 5 U.S.C. § 552(b)(7)(F). "That language is very broad." *Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 205 (D.C. Cir. 2014). "The exemption does not require that a particular kind of individual be at risk of harm; any individual will do." *Id.* (internal quotation marks omitted). "Disclosure need not definitely endanger life or physical safety; a reasonable expectation of endangerment suffices." *Id.* "Unlike Exemption 7(C), which involves a balancing test, Exemption 7(F) is an absolute ban against the disclosure of certain information, and, within limits, courts defer to the agency's assessment of danger." *ACLU v. Fed. Bureau of Prisons*, Civ. A. No. 20-2320 (RBW), 2022 WL 17250300, at *18 (D.D.C. Nov. 28, 2022) (cleaned up).

Here, the Agency determined that disclosing the identity of Individual X could reasonably be expected to endanger his or her life or physical safety. *See* Hudgins Decl. ¶¶ 26-28. As described above, Individual X stole cryptocurrency from the Silk Road, which was "utilized by thousands of drug dealers and other vendors to distribute hundreds of kilograms of illegal drugs and other unlawful goods and services to well over 100,000 buyers, and to launder hundreds of millions of dollars derived from these illegal transactions." *Approximately 69,370 Bitcoin*, 2022 WL 888655, at *1. According to an investigation conducted by the Criminal Investigation Division of the Internal Revenue Service and the U.S. Attorney's Office for the Northern District of California, when Ulbricht became aware of Individual X's online identity, he "threatened Individual X for

9

return of the cryptocurrency to Ulbricht." *Id.* While Ulbricht is currently in custody, it is reasonable to expect that the life or physical safety of Individual X, who stole billions of dollars' worth of cryptocurrency from a criminal enterprise, could be endangered if his or her identity were revealed. The foreseeable harm under the circumstances, further, is manifestly apparent from the context. *Groenendal*, 2024 WL 1299333, at *10; *Reps. Comm.*, 3 F.4th at 372.

## CONCLUSION

The Court should grant Defendant's motion for summary judgment for the reasons above.

Date: June 18, 2024
Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar # 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:  */s/ Sam Escher*
SAM ESCHER, D.C. Bar # 1655538
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-2531
Sam.Escher@usdoj.gov

*Attorneys for the United States of America*