UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BATTLE BORN INVESTMENTS COMPANY, LLC, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE, <br><br> Defendant. | Civil Action No. 24-0067 (BAH) |

## DECLARATION OF NATASHA HUDGINS

I, Natasha Hudgins, declare the following to be a true and correct statement of facts:

1)    I am an Attorney-Advisor with the Executive Office for United States Attorneys ("EOUSA"), United States Department of Justice ("DOJ"). I am assigned to EOUSA's Freedom of Information Act/Privacy Act ("FOIA/PA") Staff (the "Staff"), which is the component within EOUSA designated to administer both the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *amended by* the OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524, and the Privacy Act of 1974 ("PA"), 5 U.S.C. § 552a. In that position, I have several responsibilities including acting as a liaison with other divisions and offices of the Department of Justice ("DOJ") in responding to access requests as well as FOIA and PA litigation; reviewing FOIA and PA requests for access to records and case files located in this office and 94 United States Attorney's offices ("USAOs") throughout the nation; reviewing correspondence related to FOIA and PA requests; reviewing searches conducted in response to FOIA and PA access requests; identifying the location of records responsive to FOIA and PA requests; and preparing EOUSA's responses to FOIA and PA requests to ensure that determinations to withhold or release responsive records

are in accordance both the FOIA and the PA, as well as with DOJ regulations, *see* 28 C.F.R. §§ 16.3 *et seq.* and §§ 16.40 *et seq.*

2) The Staff processes and reviews both FOIA and PA requests, responds to administrative appeals, and acts as agency counsel in lawsuits challenging its determinations. As an Attorney-Advisor on the Staff, I have access to EOUSA's files, and I have authority to release and/or withhold records requested under the FOIA and PA. I also have authority to explain the rationale for EOUSA's disclosure determinations.

3) Due to the nature of my official duties, I am familiar with the procedures followed by EOUSA in responding to FOIA requests generally as well as the actions that EOUSA has taken in response to the FOIA request submitted by the plaintiff in this case, Battle Born Investments Company, LLC (hereafter "Plaintiff"). The statements I make hereinafter are based on my review of the official files and records of EOUSA, my own personal knowledge, and information I acquired through the performance of my official duties.

4) The purpose of this declaration is to provide the Court with information regarding Plaintiff's FOIA requests to EOUSA and the rationale behind EOUSA's responses. This declaration consists of (1) a chronology of the FOIA request submitted by Plaintiff and EOUSA's responses and (2) information supporting EOUSA's withholdings pursuant to Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) in accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert denied*, 415 U.S. 977 (1974).

**FOIA REQUEST AND EOUSA RESPONSE**

5) Plaintiff submitted a FOIA request to EOUSA on October 20, 2023 via EOUSA's electronic FOIAXpress Public Access Link system. The request sought all records and documents showing (1) the name of the person who signed a Consent and Agreement to Forfeiture with the U.S. Attorney's Office, Northern District of California, on or about November 3, 2020, concerning

2

a cryptocurrency wallet referred to as 1HQ3 in *United States v. Approximately 69,370 Bitcoin, et al.*, Case No. 3:20-cv-7811-RS (N.D. Cal.); (2) the name of any person believed to have owned, possessed, or controlled that wallet; and (3) the name of the person referred to as "Individual X" in that case.  I respectfully refer the Court to the documents for a true and accurate statement of the contents of the FOIA request, attached hereto as **Exhibit A.**

6) EOUSA assigned request tracking number EOUSA-2024-000128 to the request.

7) On October 24, 2023, EOUSA sent the request for a search in the United States Attorney's Office for the Northern District of California ("USAO-CAN").  On December 4, 2023, USAO-CAN provided a records response to EOUSA.

8) On March 20, 2024, EOUSA issued its final response denying the request in full, citing Exemptions (b)(3), (b)(6), (b)(7)(A), and (b)(7)(C).  I respectfully refer the Court to the documents for a true and accurate statement of the contents of the FOIA request, attached hereto as **Exhibit B.**

9) After further research and consultation with the USAO-CAN, it was brought to EOUSA's attention that a copy of the Consent and Agreement to Forfeiture document was requested and partially released to another requester in the past. Therefore, EOUSA provided Plaintiff with a supplemental release on June 6, 2024.  I respectfully refer the Court to the documents for a true and accurate statement of the contents of the FOIA request, attached hereto as **Exhibit C.**

## EXEMPTIONS

*Exemptions (b)(6) and (b)(7)(C):  Privacy*

10) Exemption (b)(6) of the FOIA permits the withholding of personnel and medical files and similar files, which if disclosed, would constitute a clearly unwarranted invasion of

personal privacy. 5 U.S.C. § 552(b)(6). This exemption has been interpreted by the United States Supreme Court broadly to apply to all information pertaining to a particular individual.

11) To protect information under Exemption (b)(7), an agency must ensure that the information was compiled for law enforcement purposes. In this instance, information requested was created as part of a civil forfeiture action by the USAO-CAN because of some criminal activity.

12) Similarly, Exemption (b)(7)(C) protects from disclosure "records or information that was compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information…could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

13) EOUSA determined that, as an initial matter, the threshold for Exemption (b)(6) was satisfied because the information withheld applies to a particular person. EOUSA also determined that the threshold for Exemption (b)(7)(C) was satisfied because the records in question were created for the purpose of handling a civil law enforcement action.

14) EOUSA asserted Exemptions (b)(6) and (b)(7)(C) to protect the non-public information concerning the "Individual X" that was requested by Plaintiff. The disclosure of Individual X's name contained in the records would subject the third party to an unwarranted invasion of their personal privacy by leading to efforts of individuals to contact them directly, gain access to their personal information, or subject them to harassment or harm.

15) Plaintiff failed to provide a public interest justification that would outweigh the personal privacy of the individual at issue. Plaintiff simply asserted that "[n]o FOIA exemption authorizes the Government to conceal the identity of a person who forfeited, owned, possessed, or controlled the wallet worth approximately $2 billion." *See* **Exhibit A**.

16) Simply stating the belief that there is a lack of privacy interest does not diminish the privacy interest to the individual. Plaintiff referenced a press release that uses "Individual X" as an identifier in their FOIA request. The Department never released the name of the person identified as Individual X in the press release or otherwise in court proceedings. Plaintiff has not provided a public interest justification beyond their individual interest in the requested document.

17) Further, the release of Individual X's name would not shed further light on the activities of the federal government, nor would it assist Plaintiff or other individuals to understand and obtain information about the workings of their government.

18) EOUSA is of the belief that a search was not required, as Plaintiff did not provide consent, a proof of death or overriding public interest justification to override the personal privacy of an individual whose identity was not made public in any way. However, EOUSA conducted a search to ensure that the USAO-CAN had not publicly acknowledged the identity of Individual X in a court filing or other publication after the press release.

19) Prior to the filing of this declaration, I confirmed with the USAO-CAN that the name of Individual X has not been made public. In fact, only designated USAO-CAN personnel knows the identity of individual X.

20) As mentioned above, there is foreseeable harm in releasing the identity of Individual X because release would subject them to harassment and physical harm. The District Court for the Northern District of California and Ninth Circuit have already denied Plaintiff's requests to reveal the identity of Individual X in the underlying proceedings where Plaintiff believes the Individual X was affiliated with Battle Born and/or its bankruptcy proceedings. Plaintiff's continued pursuit of Individual X's identity is supplemental evidence that revealing their identity would likely subject them to harm and harassment.

21) Therefore, the privacy interest outweighs the public interest for the third-party.

22) EOUSA segregated the document Consent and Agreement to Forfeiture Agreement requested by Plaintiff by releasing in part two pages. EOUSA redacted the names all individuals listed in the document.

23) The EOUSA properly asserted Exemptions (b)(6) and (b)(7)(C) to protect the third-party individuals and those privacy interests in the document.

***Exemption (b)(7)(F):  Protection of Physical Safety***

24) Exemption (b)(7)(F) protects from disclosure law enforcement information that "could reasonably be expected to endanger the physical safety of any individual."

25) In this instance, the document requested by Plaintiff would identify an individual who is accused of theft of several thousand Bitcoins that had a value of over $1 billion when seized.[i]

26) In this case, the Bitcoin was stolen by "Individual X" from addresses at Silk Road, the most sophisticated and extensive criminal marketplace on the Internet, serving as a sprawling black-market bazaar where unlawful goods and services, including illegal drugs of virtually all varieties, were bought and sold regularly by the site's users.

27) The physical safety of an individual who is accused of stealing over $1 billion worth of assets can be reasonably expected from several people, especially those who believe they've been harmed by the theft.  This threat of harm is heightened when the goods are believed to be stolen proceeds from criminal activity.

---

[i] https://www.justice.gov/usao-ndca/pr/united-states-files-civil-action-forfeit-cryptocurrency-valued-over-one-billion-us

28)     Further, Individual X has already received threats from an individual connected to Silk Road. Releasing Individual X's identity to the public would put their life at grave risk by confirming their involvement in this federal case.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.

Executed this 18th day of June 2024.

_____
Natasha Hudgins
Attorney-Advisor,
Freedom of Information/Privacy Act Staff
Executive Office for United States Attorneys