## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**BATTLE BORN INVESTMENTS COMPANY, LLC,**

       Plaintiff,

   v.

**UNITED STATES DEPARTMENT OF JUSTICE,**

       Defendant.

**Civil Action No. 24-cv-00067 (BAH)**

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND
## PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
## <u>AND MEMORANDUM IN SUPPORT THEREOF</u>

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES................................................................................................ii

MOTION......................................................................................................................... 1

INTRODUCTION............................................................................................................ 1

BACKGROUND.............................................................................................................. 3

    A.   Silk Road is Defunct and Ross Ulbricht is Serving a Life Sentence ............................ 3

    B.   Three Other Persons Who Allegedly Misappropriated Bitcoin from
        Silk Road Have Been Publicly Disclosed and Faced No Physical Harm..................... 3

    C.   Individual X Consented to the Forfeiture of Bitcoin Worth Over $4 Billion.............. 5

    D.   Battle Born Filed a FOIA Action to Shine Light on the Government's Actions.......... 6

LEGAL STANDARD ...................................................................................................... 6

ARGUMENT .................................................................................................................. 7

    I.   THE GOVERNMENT'S SUMMARY JUDGMENT MOTION FAILS BECAUSE
       THE GOVERNMENT IGNORED LOCAL RULE 7(H) ............................................ 7

    II.   BATTLE BORN IS ENTITLED TO SUMMARY JUDGMENT AS TO
       EXEMPTION 7(C)............................................................................................... 7

    A.   Individual X's Forfeiture Agreement Does Not Disclose Private Information ............ 8

    B.   Any Privacy Interest Is Outweighed By The Enormous Public Interest in the
       Government's Handling of Silk Road Forfeiture Cases............................................. 9

    III.   BATTLE BORN IS ENTITLED TO SUMMARY JUDGMENT AS TO
       EXEMPTION 7(F)............................................................................................. 14

CONCLUSION .............................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,

    477 U.S. 242 (1986) ............................................................................................ 6

*Balt. Sun v. U.S. Marshals Serv.*,
    131 F. Supp. 2d 725 (D. Md. 2001)................................................................... 8, 12

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ........................................................................................ 7, 8

*Elec. Priv. Info. Ctr. v. Dep't of Just.*,
    18 F. 4th 712 (D.C. Cir. 2021) ............................................................................ 8

*Evans v. Fed. Bureau of Prisons*,
    951 F.3d 578 (D.C. Cir. 2020)............................................................................ 6

*Gleklen v. Democratic Cong. Camp*,
    1999 F.3d 1365 (D.C. Cir. 2000)...................................................................... 15

*Greenberg v. Food Drug Admin.*,
    803 F.2d 1213 (D.C. Cir. 1986)......................................................................... 6

*Groenendal v. Exec. Off. for U.S. Att'ys*,
    Civ. A. No. 20-1030 (DLF), 2024 WL 129933 (D.D.C. Mar. 27, 2024)................................ 13

*Harris v. Phillips et al.*,
    2024 WL 129933 (E.D. Cal. Jan. 11, 2024) ........................................................13

*Lardner v. Dep't of Justice*,
    638 F. Supp. 2d 14 (D.D.C. 2009)...................................................................... 12

*Multi Ag Media LLC v. Dep't of Agric.*,
    515 F.3d 1224 (D.C. Cir. 2008).......................................................................... 12

*Nat'l Ass'n of Home Builders v. Norton*,
    309 F.3d 26 (D.C. Cir. 2002)............................................................................. 12

*Reps. Comm. for Freedom of the Press v. FBI*,
    3 F.4th 350 (D.C. Cir. 2021).........................................................................13, 18

*Summers v. Dep't of Justice*,
    140 F.3d 1077 (D.C. Cir. 1998)........................................................................... 1

*Ulbricht v. United States*,
    2022 WL 2116685 (S.D.N.Y. June 13, 2022) ........................................................ 3

*United States v. Approximately 69,370 Bitcoin*,
    No. 3:20-cv-07811-RS (N.D. Cal. Nov. 20, 2020), ECF 8 ................................ 14, 16

*United States v. Force IV*,
    No 3:15-r-00319-RS (N.D. Cal. Nov. 16, 2020), ECF 182 ............................... 11, 13

*United States v. Force*,
    No. 15-CR-319-RS (N.D. Cal. July 1, 2015) ........................................................ 4

*United States v. Ulbricht*,
    858 F.3d 71 (2d Cir. 2017) ..................................................................... *passim*

*United States v. Ulbricht*,
    No.1:14-cr-00068-LGS (S.D.N.Y. June 1, 2015), ECF 269 ................................... 3

*United States v. Zhong*,
    No. 1:22-cr-00606-PGG (S.D.N.Y. Mar. 31, 2023), ECF 32 ............................ 4, 13, 14, 18

*Watkins L. & Advoc., PLLC v. United States Dep't of Just.*,
    78 F.4th 436 (D.C. Cir. 2023) ............................................................... 16

**Statutes**

5 U.S.C. § 552(a)(4)(B) ........................................................................... 1, 6

5 U.S.C. § 552(b)(6) ............................................................................... 8

5 U.S.C. § 552(b)(7) ............................................................................... 9

5 U.S.C. § 552(b)(7)(C) ........................................................................... 8

5 U.S.C. § 552(b)(7)(F) ........................................................................... 14

**Rules**

Fed. R. Civ. P. 56 ................................................................................. 1

Fed  R. Civ P 56(c) ............................................................................... 6

Fed. R. Civ. P. 56(c)(2) ........................................................................... 9

Fed. R. Civ. P. 56(c)(4) ........................................................................... 6

Fed. R. Evid. 701(a) ............................................................................... 9

D.C. LCvR  7(H) ................................................................................... 7

## Other Authorities

Alex Hern, *US seizes $1bn in bitcoin linked to Silk Road site* (Nov. 6, 2020),
    www.theguardian.com/technology/2020/nov/06/us-seizes-1bn-in-bitcoin-
    linked-to-silk-road-site ............................................................................................... 1

CNBC, *The secret life of Jimmy Zhong, who stole – and lost – more than $3
    billion* (Oct. 17, 2023), www.cnbc.com/2023/10/17/crypto911.html ...................................... 18

Chris Isidore, *Feds seize $1 billion in bitcoins they say were stolen from Silk Road*
    (Nov. 6, 2020), www.cnn.com/2020/11/06/business/bitcoin-seized-silk-road-
    ulbricht/index.html; ..................................................................................................... 1

U.S. Dep't of Justice, *DEA Agent Sentenced for Extortion, Money Laundering
    and Obstruction Related to Silk Road Investigation* (Oct. 19, 2015),
    www.justice.gov/opa/pr/former-dea-agent-sentenced-extortion-money-
    laundering-and-obstruction-related-silk-road ...................................................... 4, 11

U.S. Dep't. of Justice, *Former Secret Service Agent Sentenced in Scheme Related
    to Silk Road Investigation* (Nov. 7, 2017), www.justice.gov/opa/pr/former-
    secret-service-agent-sentenced-scheme-related-silk-road-investigation .................................. 11

U.S. Dep't of Justice, *United States Files A Civil Action To Forfeit
    Cryptocurrency Valued At Over One Billion U.S. Dollars* (Nov. 5, 2020),
    www.justice.gov/usao-ndca/pr/united-states-files-civil-action-forfeit-
    cryptocurrency-valued-over-one-billion-us ...................................................... 1, 5, 10

*Silk-Road*, Movie, Lionsgate
    www.lionsgate.com/movies/silk-road ...................................................................... 10

U.S. Marshals Service, Judicial Security, www.usmarshals.gov/what-we-
    do/judicial-security .................................................................................................. 16

## MOTION

Plaintiff Battle Born Investments Company, LLC moves for summary judgment on its complaint against Defendant United States Department of Justice. *See* Fed. R. Civ. P. 56; D.C. LCvR 7(h).

## INTRODUCTION

In any weighing of the public interest under FOIA, this case breaks the scales. It involves the most notorious online criminal marketplace *and* the largest cryptocurrency seizure in history.

The issue is whether the Government may withhold the name of a person who signed a contract giving up his interest in a wallet containing Bitcoin now worth more than $4 billion, nicknamed "Individual X" by the Government. The Government acknowledged the extraordinary public interest in a press release proclaiming it "the largest seizure of cryptocurrency in the history of the Department of Justice," involving property from "*the most notorious online criminal marketplace of its day*," a website called Silk Road. U.S. Dep't of Justice, *United States Files A Civil Action To Forfeit Cryptocurrency Valued At Over One Billion U.S. Dollars* (Nov. 5, 2020), www.justice.gov/usao-ndca/pr/united-states-files-civil-action-forfeit-cryptocurrency-valued-over-one-billion-us. The forfeiture garnered headlines throughout the nation and around the world. *See, e.g.*, Chris Isidore, *Feds seize $1 billion in bitcoins they say were stolen from Silk Road* (Nov. 6, 2020), www.cnn.com/2020/11/06/business/bitcoin-seized-silk-road-ulbricht/index.html; Alex Hern, *US seizes $1bn in bitcoin linked to Silk Road site* (Nov. 6, 2020), www.theguardian.com/technology/2020/nov/06/us-seizes-1bn-in-bitcoin-linked-to-silk-road-site.

The evidence shows both that there is a compelling public interest in knowing X's identity and that X is not in any danger. The Government's declaration—rife as it is with legal advocacy, conclusory statements, and factual errors that are inadmissible in and irrelevant to this *de novo* lawsuit, *see* 5 U.S.C. § 552(a)(4)(B) ("the court shall determine the matter de novo"); *Summers v.*

*Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998) (explaining that review is "de novo")—provides no justification for withholding X's identity under FOIA.

Exemption 7(C) is inapplicable because the forfeiture agreement neither says that X committed a crime nor discloses any private information about X other than his name. Any privacy interest is vastly outweighed by the compelling public interest in knowing who gave up the $4 billion wallet and why the Department of Justice failed to pursue criminal charges.

Exemption 7(F) does not justify withholding because there is no credible threat to X. The evidence shows that Ross Ulbricht made one unspecified threat to X in 2013 while seeking to recover Bitcoin that X and other persons allegedly took from Silk Road. But Ulbricht's decade-old threat is meaningless. There is no evidence that Ulbricht ever threatened violence or has threatened X at all since 2013. Ulbricht has no incentive to attack X because X no longer possesses the property, Ulbricht no longer has a claim to any Silk Road proceeds, and he expressly disavowed any interest in X's Bitcoin. Finally, Ulbricht neither has shown a desire to retaliate against similar actors nor has any ability to retaliate against anyone, because he is serving a life sentence in federal prison.

The Court should require the Government to disclose X's name.

## BACKGROUND

### A.    Silk Road is Defunct and Ross Ulbricht is Serving a Life Sentence.

From 2011 until October 2013, Silk Road was "an online marketplace whose users primarily … purchased and sold illegal goods and services." *United States v. Ulbricht*, 858 F.3d 71, 82 (2d Cir. 2017). "Transactions on Silk Road exclusively used Bitcoins, an anonymous but traceable digital currency." *Id*. at 82–83. Ross Ulbricht, Silk Road's creator, "earned millions of dollars in profits from the [Bitcoin] commissions collected by Silk Road on purchases." *Id*. at 83. "In October 2013, the government arrested Ulbricht, seized the Silk Road servers, and shut down the site." *Id.* The Government seized and forfeited all Silk Road proceeds.

Ulbricht was convicted of numerous charges and sentenced to double life imprisonment plus forty years, without the possibility of parole. Judgment, *United States v. Ulbricht*, No.1:14-cr-00068-LGS (S.D.N.Y. June 1, 2015), ECF 269; *United States v. Ulbricht*, 858 F.3d at 134 n.73. He was also ordered to pay $183,961,921 in civil penalties. *See Ulbricht v. United States*, 2022 WL 2116685, at *2 (S.D.N.Y. June 13, 2022). The Government effectively agreed to deem Ulbricht's penalty fully paid in return for Ulbricht's agreement to forfeit any interest in X's Bitcoin and not challenge its forfeiture. *See* Ex. 1, ¶¶ 1–5 (Ulbricht forfeiture agreement).

### B.    Three Other Persons Who Allegedly Misappropriated Bitcoin from Silk Road Have Been Publicly Disclosed and Faced No Physical Harm.

The Government subsequently prosecuted James Zhong for stealing over $3.3 billion in Bitcoin from Silk Road by "creating a string of ... Silk Road accounts," "triggering over 140 transactions in rapid succession in order to trick Silk Road's withdrawal-processing system into releasing approximately 50,000 Bitcoin ... into ZHONG's accounts" in September 2012. U.S. Dep't of Justice, *U.S. Attorney Announces Historic $3.36 Billion Cryptocurrency Seizure and Conviction in Connection with Silk Road Dark Web Fraud* ("*Zhong Press Release*") (Nov. 7,

2022),                     www.justice.gov/usao-sdny/pr/us-attorney-announces-historic-336-billion-cryptocurrency-seizure-and-conviction. The Government agreed to charge Zhong with only a single count of wire fraud and recommended that he serve less than two years in prison. *See id*.; Sentencing Mem. at 1–2, *United States v. Zhong* ("*Zhong*"), No. 1:22-cr-00606-PGG (S.D.N.Y. Mar. 31, 2023), ECF 32. In return, Zhong agreed to forfeit that Bitcoin and not challenge the forfeiture. *See Zhong Press Release*. Zhong was sentenced to just one year and one day in prison. *See* Judgment, *Zhong*, No. 1:22-cr-00606-PGG (S.D.N.Y. Apr. 18, 2023), ECF 35.

The Government also prosecuted a corrupt DEA agent, Carl Force IV, who illegally obtained Bitcoin from the Silk Road platform while leading an undercover investigation. Plea Agreement, *United States v. Force* ("*Force Plea*"), No. 15-CR-319-RS (N.D. Cal. July 1, 2015), at 4 ¶ 2, www.justice.gov/usao-ndca/file/624981/dl. In June 2013, Force extorted Bitcoin after threatening to reveal Ulbricht's identity to the Government, and less than a year later Force used Silk Road administrator credentials to steal hundreds of thousands of Bitcoin from a third-party victim. Sentencing Mem. at 4–6, *United States v. Force*, No. 15-CR-319-RS (N.D. Cal. Oct. 9, 2015), ECF 76. Force agreed to forfeit the stolen Bitcoin. Force Plea, at 12 ¶ 11. He received a sentence of 78 months in prison. U.S. Dep't of Justice, *Former DEA Agent Sentenced for Extortion, Money Laundering and Obstruction Related to Silk Road Investigation* (Oct. 19, 2015), www.justice.gov/opa/pr/former-dea-agent-sentenced-extortion-money-laundering-and-obstruction-related-silk-road.

In addition, the Government prosecuted a corrupt Secret Service agent, Shaun Bridges, who had also investigated Silk Road while undercover. *See Ulbricht*, 858 F.3d at 84. In January 2013, Bridges obtained an administrator password for Silk Road and used those credentials "to change other users' passwords, empty their Bitcoin wallets" and keep the proceeds. *Id*. Bridges

pleaded guilty to money laundering and was sentenced to 71 months in prison. *Id*. at 84 n.6. He also was ordered to forfeit the stolen Bitcoin.

### C.   Individual X Consented to the Forfeiture of Bitcoin Worth Over $4 Billion.

X's forfeiture agreement concerns what was the "largest seizure of cryptocurrency in the history of the United States": a cryptocurrency wallet containing roughly 69,370 Bitcoin and related cryptocurrency now worth more than $4 billion.[1] *See* U.S. Dep't of Justice, *United States Files a Civil Action to Forfeit Cryptocurrency Valued at Over One Billion U.S. Dollars* ("*Individual X Press Release*") (Nov. 5, 2020), www.justice.gov/usao-ndca/pr/united-states-files-civil-action-forfeit-cryptocurrency-valued-over-one-billion-us.

The forfeiture agreement states that the "Potential Claimant"—whom the Government now calls X—"agrees and consents to the forfeiture" of the Bitcoin. *See* ECF 15-7. The agreement does not indicate whether X owned or possessed that Bitcoin or why he gave up his interest in it. *See id*. Nor does the forfeiture agreement allege that X stole Bitcoin from Silk Road. The Government subsequently claimed that X acquired the Bitcoin just as Zhong did—by exploiting "a vulnerability" in Silk Road's operating system that allowed him to steal the Bitcoin "from the general pool of Silk Road bitcoin and not from any particular Silk Road user accounts" in 54 distinct transactions. *See* Ex. 2 (Haynie Reply Decl.), ¶¶ 6–7, 24. But unlike with Zhong, the Government never charged X for that supposed offense; it has instead let X off the hook—evidently in exchange for his agreement not to contest the forfeiture action.

---

[1] The civil forfeiture action is pending before the U.S. Supreme Court. Among its many errors, the Government FOIA lawyer's declaration falsely asserts that a district court and an appellate court "denied Plaintiff's requests to reveal the identity of Individual X." ECF 15-2 ("Hudgins Decl."), at ¶ 20. No court ever made any such ruling. In fact, that case never even reached discovery.

**D.      Battle Born Filed a FOIA Action to Shine Light on the Government's Actions.**

On October 19, 2023, Battle Born submitted a FOIA request seeking "records and documents showing, inter alia, "the name of any person believed to have owned, possessed, or controlled" the 1HQ3 wallet. ECF 15-3; *see* Compl. ¶ 13. Plaintiffs filed suit on January 8, 2024. ECF 1. The sole issue is the identity of X, the person who consented to forfeiture of the Bitcoin.

## LEGAL STANDARD

In a FOIA case, the Government bears the burden of proving that information is properly subject to withholding, and this Court conducts a *de novo* review. 5 U.S.C. § 552(a)(4)(B) (stating that "the court shall determine the matter de novo" and "the burden is on the agency").

Summary judgment should be used "with caution so that no person will be deprived of his or her day in court to prove a disputed material factual issue." *Greenberg v. Food Drug Admin*., 803 F.2d 1213, 1216 (D.C. Cir. 1986); *see also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986) ("[E]vidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). Nonetheless, many FOIA cases can be resolved in the Government's favor at summary judgment. This is not one of those cases.

In this case, the Government failed to obey the requirement of Rule 56(c) that a "declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge" and "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4). Summary judgment may be granted in the Government's favor based on agency declarations only "if they contain reasonable specificity of detail rather than merely conclusory statements"—which is not true of the Government FOIA lawyer's declaration here—and they are not "called into question by contradictory evidence in the record"—which also is not true of that declaration. *See Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 584 (D.C. Cir. 2020) (citation omitted).

When it is clear from the complaint and other competent evidence that there is no valid FOIA exemption, the Court should grant summary judgment in favor of the movant. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (finding no requirement that movant introduce evidence to support summary judgment when nonmoving party "will bear the burden of proof at trial on a dispositive issue"). This is one of those cases.

## ARGUMENT

### I.     THE GOVERNMENT'S SUMMARY JUDGMENT MOTION FAILS BECAUSE THE GOVERNMENT IGNORED LOCAL RULE 7(H)

The Government's summary judgment motion should be denied because it failed to comply with Local Rule 7(h), which requires that the Government's statement of undisputed material facts "include references to the parts of the record relied on to support the statement." D.C. LCvR 7(h)(1). Apart from a brief chronology of procedural steps, the Government's ostensible Rule 7(h) statement consists entirely of the conclusory and unsubstantiated assertion that "Defendant applied its withholdings correctly." ECF 15-1, ¶ 8. That's not a statement of fact, and it's not undisputed. The document does not include relevant factual assertions or point to admissible evidence. There would be no need for a statement of material facts if a party could just state its desired legal conclusion: "Defendant is right." Furthermore, the only evidence of how "Defendant applied its withholdings" was itself a conclusory list of statutory exemptions without any factual analysis. ECF 15-5, 15-6.

Given the Government's failure to file a proposed undisputed statements of material facts and demonstrate where in the record they find support, the Government's motion must be denied.

### II.    BATTLE BORN IS ENTITLED TO SUMMARY JUDGMENT AS TO EXEMPTION 7(C).

Battle Born is entitled to summary judgment because the declaration by Government FOIA lawyer Natasha Hudgins shows there is no evidence to support the claimed FOIA exemptions. In

a FOIA case, the Government bears the burden of proving that the evidence supports an exemption. At summary judgment, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an *absence of evidence to support the nonmoving party's case*." *Celotex*, 477 U.S. at 323, 325 (emphasis added). The moving party is not required to offer evidence. *Id.* at 323. In this case, given the absence of evidence to support any exemption, this Court should grant summary judgment to Battle Born.

Exemption 7(C) concerns "information compiled for law enforcement purposes" where disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."[2] 5 U.S.C. § 552(b)(7)(C). To prevail, the Government must show that "disclosure could 'reasonably be expected to constitute an unwarranted invasion of privacy'" and that "the 'personal privacy interest' is not 'outweighed by the public interest in disclosure.'" *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 18 F. 4th 712, 718 (D.C. Cir. 2021) (citations omitted). The Government cannot make those showings.

**A.      Individual X's Forfeiture Agreement Does Not Disclose Private Information.**

The Government's assertion of privacy interests is based on a straw argument. The forfeiture agreement does not disclose any private information. It does not say that X was investigated. It does not say that he acquired the Bitcoin illegally. It does even say that he owned or possessed the Bitcoin. All it says is that X "agrees and consents to the forfeiture" of the Bitcoin. ECF 15-7. X's acquiescence in a forfeiture agreement—voluntarily, without any stated coercion or concession by the Government—does not give rise to a "persuasive privacy interest." *Balt. Sun v. U.S. Marshals Serv.*, 131 F. Supp. 2d 725, 729 (D. Md. 2001) (finding no privacy interest under

---

[2] The Government makes no attempt to justify withholding under Exemption 6, which pertains to certain "personnel and medical files and similar files." 5 U.S.C. § 552(b)(6); *see* Mot. 6.

Exemption 7(C) where "[p]urchasers of previously seized property . . . voluntarily cho[se] to participate in the purchase of property from the United States government"). X's privacy interest is no different from that of anyone else who agreed to forfeit Bitcoin once owned by Ulbricht. Furthermore, the forfeiture agreement includes an integration clause:

> 7.     This agreement constitutes the entire agreement of the parties and relates solely to the matters described in this agreement.

The integration clause proves that X did not ask the Government to conceal his identity.

Ms. Hudgins speculates that disclosure of X's name could "lead[ ] to efforts of individuals to contact [X] directly, gain access to [X's] personal information, or subject [X] to harassment or harm." Hudgins Decl., ¶ 14. But that speculative opinion is inadmissible and irrelevant. It is inadmissible because it is not grounded in "the witness's perception." Fed. R. Evid. 701(a). Inadmissible opinion testimony cannot raise a triable issue on summary judgment. *See* Fed. R. Civ. P. 56(c)(2) (allowing party to "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible") & (4) (requiring affidavit "set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters"). Furthermore, Ms. Hudgins's speculation is irrelevant because the issue under Exemption 7(C) is whether the *disclosure* reveals private information. 5 U.S.C. § 552(b)(7). Hypothetical collateral consequences—which could be raised in response to any FOIA request—do not retrospectively make the disclosure a privacy violation.

**B.     Any Privacy Interest Is Outweighed By The Enormous Public Interest in the Government's Handling of Silk Road Forfeiture Cases.**

In this case, any privacy interest is outweighed by the tremendous public interest in disclosure. There are several distinct public interests that warrant disclosure here.

**1.** As the Government admitted in 2020, the forfeiture agreement involved the "largest seizure of cryptocurrency in the history of the United States" from "the most notorious online criminal marketplace of its day," and the public wants to know, "Where did the money go?" *Individual X Press Release* at 1. The Government itself posed that question:

> "Silk Road was the most notorious online criminal marketplace of its day," said U.S. Attorney Anderson. "The successful prosecution of Silk Road's founder in 2015 left open a billion-dollar question. Where did the money go? Today's forfeiture complaint answers this open question at least in part. $1 billion of these criminal proceeds are now in the United States' possession."

The Government acknowledged that its forfeiture complaint answered the question only "in part," recognizing that the public deserves an answer in full. The public cannot answer that question and properly evaluate what the Government did in its name unless the Government complies with its legal obligation to disclose where the money went.

The public interest in knowing "Where did the money go?" is so obvious that Ms. Hudgins's declaration, rather than offering any contrary facts, instead tries to impermissibly shift the legal burden to Plaintiff. Hudgins Decl., ¶ 16. In its brief, the Government doesn't deny there is a public interest, but complains (at 8) that Plaintiff's "main" concern is its "private interests." That is nonsense. In every FOIA case, the plaintiff has a private interest in making the Government comply with the law; otherwise, it would not incur the time and expense of litigation. The issue is whether there is a *public* interest—and there is here, as the Government does not seriously dispute.

However, the Government understates the public interest and exaggerates the supposed danger. According to Ms. Hudgins, "the Bitcoin was stolen by 'Individual X'" from Silk Road, Hudgins Decl., ¶ 26, which if true would make X one of the most successful thieves of all time. More than a decade has passed, Ulbricht poses no danger to anyone, and Silk Road is the subject of a major motion picture. *See* Silk Road, LIONSGATE, www.lionsgate.com/movies/silk-road.

The public interest exceeds that of most FOIA matters.

**2.** A distinct public interest warranting disclosure arises from the unusual context of X's forfeiture agreement. One clue about what the Government may be hiding emerges from its bizarre decision to redact the name of a pending criminal case in X's forfeiture agreement:



Redacting the caption of a presumptively public criminal case under FOIA appears to be unprecedented. That unusual maneuver demands public explanation in light of the Government's public admission that X's forfeiture is related to the criminal prosecutions of two corrupt former federal agents who stole Bitcoin from Silk Road. *See* Notice, *United States v. Force IV*, No 3:15-r-00319-RS (N.D. Cal. Nov. 16, 2020), ECF 182. Those two defendants, former DEA agent Carl M. Force IV and former U.S. Secret Service agent Shaun W. Bridges, were prosecuted and their stolen Bitcoin forfeited amid considerable publicity, with no claim that their safety was at risk. *See, e.g.,* U.S. Dep't of Justice, *Former DEA Agent Sentenced for Extortion, Money Laundering and Obstruction Related to Silk Road Investigation* (Oct. 19, 2015), www.justice.gov/opa/pr/former-dea-agent-sentenced-extortion-money-laundering-and-obstruction-related-silk-road; U.S. Dep't of Justice, *Former Secret Service Agent Sentenced in Scheme Related to Silk Road Investigation* (Nov. 7, 2017), www.justice.gov/opa/pr/former-secret-service-agent-sentenced-scheme-related-silk-road-investigation.

There is a compelling public interest in knowing whether X was also a federal agent, and whether the Department of Justice agreed to forgo prosecution to conceal potential corruption. Concealing X's name prevents the public from knowing why X agreed to the forfeiture and why he faced no criminal charge.

Courts routinely deny Government claims to Exemptions 6 and 7(C) in similar circumstances, emphasizing that disclosure is required where the information is needed "to assess law enforcement agencies' exercise of [their] substantial government power" and the "performance of [the agency's] duties." *Balt. Sun,* 131 F. Supp. 2d at 729 (information needed to monitor "exercise of … power to seize property" and agency's "performance of its duties regarding the disposal of forfeited property"). That is because "the public has a significant interest in being able to look at the information the [Department of Justice] had before it when making" important punishment "determinations so that the public can monitor whether the agency is correctly doing its job." *Lardner v. Dep't of Justice,* 638 F. Supp. 2d 14, 34 (D.D.C. 2009) (requiring disclosure of list of names of applicants denied clemency); *see also*, *e.g.*, *Multi Ag Media LLC v. Dep't of Agric.,* 515 F.3d 1224, 1232 (D.C. Cir. 2008) (requiring disclosure of information that would invade a privacy interest because "[w]ith the information from the database [at issue], the public can more easily determine whether [agency] is catching cheaters and lawfully administering its subsidy and benefit programs"); *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 35–37 (D.C. Cir. 2002) (requiring disclosure of information that would invade a privacy interest because of "strong public interest" in understanding "how the Secretary and [agency] are using the information" to make critical habitat designations and whether agency was lawfully administering its program).

The public interest is at its zenith here because the Government admits that it is concealing crime, and it might also be concealing corruption. The forfeiture action involves a "linked" investigation concerning "the same period of conduct," as well as "similar events, occurrences, transactions, and property," and "similar allegations and investigative activity" as the crimes committed by Force and Bridges, the corrupt federal agents convicted for hacking Silk Road and

stealing Bitcoin. Notice, *United States v. Force IV*, No 3:15-r-00319-RS (N.D. Cal. Nov. 16, 2020), ECF 182; *see* Related Case Order, *id*. (N.D. Cal. Nov. 16, 2020), ECF 183. The Government said that "the conduct includes various means of obtaining funds from Silk Road, all of which was generated through similar illegal activity." *Id*. The public needs to know whether X also was a federal agent and whether he was given a pass for that reason.[3] Without knowing X's identity, the public cannot determine whether the Government is shielding further corruption.

**3.** The compelling public interest in disclosure is further enhanced by a pattern of forfeiture agreements that suggest the Government has repeatedly allowed suspected criminals to purchase leniency by agreeing to forfeit Silk Road Bitcoin worth billions of dollars.

As discussed above, the Government charged James Zhong with only a single count of wire fraud, resulting in a sentence of just one year in prison, even though he admitted to stealing over $3.3 billion in Bitcoin from Silk Road. *See Zhong* Press Release; Judgment, *Zhong* (S.D.N.Y. Apr. 18, 2023), ECF 35. The Government evidently took this lenient approach because, like X, Zhong agreed not to challenge the Government's forfeiture. *Id*. While the Department of Justice claims that it doesn't allow people to buy their way out of prosecution, Zhong's plea deal and X's

---

[3] The Government erroneously contends (at 8) that X's identity satisfies the "foreseeable harm" standard. The foreseeable harm standard is not an independent basis for withholding documents. To the contrary, it is a limitation on withholding: even if an exemption applies, the Government must release the document anyway absent foreseeable harm. In this case, no exemption applies. Moreover, the two authorities the Government cites are readily distinguishable. One concerned disclosure of the identities of innocent "third parties and law-enforcement personnel" involved in a child-pornography prosecution. *Groenendal v. Exec. Off. for U.S. Att'ys*, Civ. A. No. 20-1030 (DLF), *Harris v. Phillips et al.,* 2024 WL 129933, at *10 (E.D. Cal. Jan. 11, 2024) The other concerned the "unique sensitivity" arising from "communications bearing on sensitive undercover operations in the midst of a policy crisis," *Reps. Comm.*, 3 F. 4th at 372, which is far removed from the Government's highly publicized handling of the Silk Road investigation.

covert civil forfeiture may belie that representation.[4] The public has a paramount interest in knowing whether the Government has been giving criminals unusually lenient deals to make it easier to collect billions of dollars in Bitcoin for itself.

Notably, the Justice Department's press release repeated Zhong's name *fifty times*. As with Agent Force and Agent Bridges, prosecutors had no concern that anyone posed a threat to Zhong's safety, although he engaged in *the same alleged conduct* as X ("unlawfully obtained over 50,000 Bitcoin from the Silk Road dark web internet marketplace") at almost *the same time* (September 2012). *Zhong Press Release*; *see* Amended Compl., ¶ 17, *United States v. Approximately 69,370 Bitcoin* ("Civil Forfeiture Compl."), No. 3:20-cv-07811-RS (N.D. Cal. Nov. 20, 2020), ECF 8.

|  | JAMES ZHONG | INDIVIDUAL X |
|---|---|---|
| DATE | 2012 | 2013 |
| AMOUNT | 50,000 Bitcoin | 70,411.46 Bitcoin |

More importantly, there is no evidence that Ulbricht or anyone else retaliated against Zhong after he forfeited Bitcoin stolen from Silk Road worth more than $3 billion.

Because the Government cannot establish that withholding under Exemption 7(C) was proper, Battle Born is entitled to summary judgment.

### III.   BATTLE BORN IS ENTITLED TO SUMMARY JUDGMENT AS TO EXEMPTION 7(F).

The Government falsely asserts (at 9) that "disclosing the identity of X could reasonably be expected to endanger his or her life or physical safety" within the meaning of Exemption 7(F). *See* 5 U.S.C. § 552(b)(7)(F) (protecting "information compiled for law enforcement purposes"

---

[4] Ms. Hudgins falsely says that X "is accused of theft of several thousand Bitcoins," Hudgins Decl., ¶ 25. There is no such accusation in the forfeiture agreement, nor have any charges been brought.

where disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy"). The Government's 7(F) argument rests entirely on its assertion that when "Ulbricht became aware of Individual X's online identity, he 'threatened Individual X for return of the cryptocurrency to *Ulbricht*.'" Mot. 9–10 (citation omitted).

The Court should not accept that vague and unsubstantiated assertion—which does not even say what the unstated threat was or even whether it was a threat of physical violence. Regardless, the Government's assertion cannot satisfy its burden because *Ulbricht* poses no credible threat, as he is serving a life prison sentence without the possibility of parole. *See United States v. Ulbricht*, 858 F.3d 71, n.73 (2d Cir. 2017).

**A.** The Government has not identified any actual threat to X's life or physical safety. Ms. Hudgins's declaration makes the dubious assertions that X "received threats from an individual connected to Silk Road" and disclosing X's identity "would put [X's] life at grave risk." Hudgins Decl., ¶ 28. But the declaration and the Government's brief provide no details about any threat, let alone the evidently fabricated multiple "threats":

- What was the threat?

- When was it made?

- How was it made?

- What indicia make it credible today?

There is no evidence that Hudgins knows any detail about any supposed threat, and there is no indication how far removed she is from any percipient witness or document. "Verdicts cannot rest on inadmissible evidence," so a witness's proffer of "sheer hearsay" that "she would not be permitted to testify about … at trial" simply "counts for nothing." *Gleklen v. Democratic Cong.*

*Camp*, 1999 F.3d 1365, 1369 (D.C. Cir. 2000). Ms. Hudgins's affidavit provides no admissible evidence about any threat.

Ms. Hudgins's supposed opinion that X's life would be at risk is inadmissible because Ms. Hudgins's has no expertise in evaluating danger. Even if Ms. Hudgins had the facts right—which she does not—she is not competent to testify as an expert witness. Conclusory statements of opinion in an affidavit are not competent summary judgment evidence. *See, e.g., Watkins L. & Advoc., PLLC v. United States Dep't of Just*., 78 F.4th 436, 450 (D.C. Cir. 2023). If the Government presented admissible evidence, the Court would be able to do its job of evaluating the credibility of any threat. Ms. Hudgins's opinion, even if it were based on admissible evidence, is not cognizable at summary judgment or at trial.[5] And her hyperbolic claim that the supposed risk to X would be "grave" is self-evidently false. The effort to blow smoke in this case casts doubt on the Government's credibility in cases where witnesses are actually in danger.

In fact, the evidence shows that X is not in any danger. The only known basis for Ms. Hudgins' affidavit is the unproven allegation in the civil forfeiture case that "Ulbricht became aware of Individual X's online identity and threatened Individual X for return of the cryptocurrency to Ulbricht. Individual X did not return the cryptocurrency." Civil Forfeiture Compl., ¶ 22. No death threat is mentioned there, either. Ulbricht—the victim—just wanted X to return the Bitcoin in 2013. Now, Ulbricht no longer claims it and X no longer possesses it.

**B.** Even if the Government could establish that Ulbricht threatened X's safety ten years ago, it cannot establish a credible threat of harm to X now. There is no credible threat to X's safety today from Ulbricht—and not even the Government says otherwise. That is because Ulbricht will

---

[5] The Government employs people who actually do objectively assess threats. *See, e.g.,* U.S. Marshals Service, Judicial Security, www.usmarshals.gov/what-we-do/judicial-security.

spend the rest of his life in prison. He is serving a double-life sentence (plus forty years) with no possibility of parole. *Ulbricht*, No.1:14-cr-00068-LGS (S.D.N.Y. June 1, 2015), ECF 269. Moreover, the Government forfeited all Silk Road Bitcoin in Ulbricht's 2015 criminal case, *see* Ex. 2, ¶ 25 (Haynie Reply Decl.); X returned his Bitcoin four years ago; and Ulbricht got credit for it, *see* Ex. 1, ¶ 5 (Ulbricht forfeiture agreement). And two years ago, Ulbricht forfeited any interest in the Bitcoin possessed by X. *Id*., ¶ 5.  So, X no longer has the Bitcoin, and Ulbricht has no claim to it. Ulbricht has neither the motive nor the ability to threaten X, let alone place his life at risk.

Nor is there any expectation of danger from anyone else. *Contra* Mot. 9-10. Ms. Hudgins's assertion that "[t]he physical safety [sic] of an individual who is accused of stealing over $1 billion worth of assets can be reasonably expected from several people, especially those who believe they've been harmed by the theft," Hudgins Decl., ¶ 27, is the product of false hearsay and inadmissible opinion. A federal agent has attested that the Bitcoin "came from the general pool of Silk Road bitcoin and *not* from any particular Silk Road user accounts." Ex. 2, ¶ 7 (Haynie Reply Decl.) (emphasis added). In other words, X took the Bitcoin directly from Silk Road's proceeds. *Id*. ¶ 6. The only victim of that suspected scheme was Ulbricht, not any individual Silk Road user. Indeed, the obvious reason Ulbricht would have "threatened Individual X for return of the cryptocurrency *to Ulbricht*," Mot. 9–10 (emphasis added), is that Ulbricht believed the Bitcoin belonged to him, *see* Ex. 2, ¶ 25 (Haynie Reply Decl.) (Bitcoin came from wallets "forfeited by

the government in the criminal prosecution of Ross Ulbricht"); Ex. 1, ¶ 4 (Ulbricht agreeing to forfeit the Bitcoin).

The Government's actions further confirm there is no actual risk of danger to persons who allegedly misappropriated Bitcoin from Silk Road a decade ago. If there were any danger, it would not have publicly trumpeted Zhong's name after Zhong pleaded guilty to doing exactly what the Government claims X did. *See Zhong Press Release*. The Government plastered Zhong's identity on its website even though—if Ms. Hudgins's rampant speculation were correct—he too would be at risk. *See* Hudgins Decl., ¶ 27. The Government also fueled publicity about the case, authorizing an IRS agent to give a detailed television interview. *See, e.g.*, CNBC, *The secret life of Jimmy Zhong, who stole – and lost – more than $3 billion* (Oct. 17, 2023), www.cnbc.com/2023/10/17/crypto911.html. Zhong, like X, admitted stealing Bitcoin from Ulbricht, yet his life is not at risk. And while Force and Bridges took Bitcoin from Silk Road users, their lives also are not at risk from anyone harmed by the theft. The Government's "'speculative or abstract fears'" of harm are insufficient to justify withholding. *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021) (citation omitted).

The Exemption 7(F) claim also fails the "foreseeable harm" test. *Contra* Mot. 10. It is not reasonable to believe that X is in danger, and the Government's two cited authorities are inapposite, as explained above; in fact, neither even addressed Exemption 7(F).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny the Government's motion for summary judgment and grant Battle Born's cross-motion for summary judgment.

Date:   July 12, 2024                                  Respectfully submitted,

<u>*/s/ Rod J. Rosenstein*</u>
Rod J. Rosenstein (D.C. Bar No. 432439)
KING & SPALDING LLP
1700 Pennsylvania Ave., NW
Suite 900
Washington, DC 20006
Telephone: (202) 737-0500
rrosenstein@kslaw.com

*Counsel for Plaintiff*
*Battle Born Investments Company, LLC*