UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BATTLE BORN INVESTMENTS
COMPANY, LLC,

               Plaintiff,

     v.

DEPARTMENT OF JUSTICE,

               Defendant.

Civil Action No. 24-0067 (BAH)

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I.      Defendant Complied with Local Civil Rule 7(h) and Has Not Ignored Its
        Precepts ................................................................................................................1

II.     Plaintiff Is Not Entitled to Summary Judgment, and Defendant has Shown that
        Individual X has a Privacy Interest ......................................................................3

III.    Plaintiff Fails to Show How Disclosing the Identity of Individual X Would
        Advance Its Asserted Public Interest ...................................................................7

IV.     The Significant Privacy Interest in Not Disclosing the Identity of Individual X
        Outweighs Any Public Interest .............................................................................9

V.      Defendant Applied Exemption 7(F) Appropriately.............................................15

# TABLE OF AUTHORITIES

## CASES

*ACLU v. Dep't of Just.*,
750 F.3d 927 (D.C. Cir. 2014) .............................................................................10, 11

*ACLU v. Fed. Bureau of Prisons*,
Civ. A. No. 20-2320 (RBW), 2022 WL 17250300 (D.D.C. Nov. 28, 2022) ............................... 15

*Anthony v. Fed. Bureau of Prisons*,
Civ. A. No. 22-1558 (TNM), 2024 WL 578956 (D.D.C. Feb. 13, 2024) ................................... 17

*Balt. Sun v. Marshals Serv.*,
131 F. Supp. 2d 725 (D. Md. 2001) ............................................................................ 5

*Burnett v. DEA*,
Civ. A. No. 19-0870 (CJN), 2021 WL 1209142 (D.D.C. Mar. 31, 2021), *aff'd*,
No. 21-5092, 2021 WL 6102268 (D.C. Cir. Dec. 3, 2021) ............................................. 21

*Calderon v. Dep't of Agric.*,
236 F. Supp. 3d 96 (D.D.C. 2017) .............................................................................. 2

*Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*,
746 F.3d 1082 (D.C. Cir. 2014) ...................................................................7, 8, 11, 13

*Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*,
854 F.3d 675 (D.C. Cir. 2017) .................................................................................. 6

*Citizens for Resp. & Ethics in Wash. v. Off. of Mgmt. and Budget*,
Civ. A. No. 19-3488 (TFH) ....................................................................................... 2

*DiBacco v. Dep't of Army*,
926 F.3d 827 (D.C. Cir. 2019) .................................................................................. 16

*Ecological Rts. Found. v. EPA*,
541 F. Supp. 3d 34 (D.D.C. 2021) ............................................................................. 17

*Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*,
777 F.3d 518 (D.C. Cir. 2015) .................................................................................. 18

*Elec. Priv. Info. Ctr. v. Dep't of Just.*,
18 F.4th 712 (D.C. Cir. 2021) ........................................................................ 6, 7, 9, 14

*Evans v. Fed. Bureau of Prisons*,
951 F.3d 578 (D.C. Cir. 2020) .................................................................................. 3

*Fund for Const. Gov't v. Nat'l Archives & Recs. Serv.*,
656 F.2d 856 (D.C. Cir. 1981) ........................................................................................... 6

*Gamboa v. Exec. Off. for U.S. Att'ys*,
126 F. Supp. 3d 13 (D.D.C. 2015) ................................................................................... 21

*Gov't Accountability Project v. Dep't of Treasury*,
Civ. A. No. 20-2138 (TSC) ................................................................................................ 2

*Halperin v. CIA*,
629 F.2d 144 (D.C. Cir. 1980) ........................................................................................... 3

*Inst. for Energy Rsch. v. Fed. Energy Regul. Comm'n*,
Civ. A. No. 22-3414 (CRC), 2024 WL 1091791 (D.D.C. Mar. 13, 2024) ....................... 1

*Jud. Watch, Inc. v. Nat'l Archives & Recs. Admin.*,
876 F.3d 346 (D.C. Cir. 2017) ................................................................................... 6, 7, 13

*N.Y. Times Co. v. Off. of Pers. Mgmt.*,
Civ. A. No. 19-3562 (ABJ) ................................................................................................ 2

*Nat'l Archives & Recs. Admin. v. Favish*,
541 U.S. 157 (2004) ..................................................................................................... 8, 14

*Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*,
740 F.3d 195 (D.C. Cir. 2014) ........................................................................... 15, 18, 20

*Sabra v. Customs & Border Prot.*,
590 F. Supp. 3d 351 (D.D.C. 2022) ................................................................................ 2, 3

*SafeCard Servs., Inc. v. Secs. and Exch. Comm'n*,
926 F.2d 1197 (D.C. Cir. 1991) ........................................................................................ 3

*Tobias v. Dep't of Com.*,
Civ. A. No. 22-2141 (JEB) ................................................................................................ 2

*United States v. Approximately 69,370 Bitcoin*,
Civ. A. No. 20-7811, 2022 WL 888655 (N.D. Cal. Mar. 25, 2022) ............................ 4, 6, 12, 18

**STATUTES**

5 U.S.C. § 552 ................................................................................................................. 1, 15

**RULES**

LCvR 7 ............................................................................................................................... 1

The United States Department of Justice ("Defendant"), parent agency of the Executive Office for United States Attorneys ("EOUSA"), through undersigned counsel, respectfully replies in support of its motion for summary judgment and opposes Battle Born Investments Company LLC's ("Plaintiff's") cross motion for summary judgment. Plaintiff brings a claim under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. For the reasons in Defendant's opening motion and supporting materials, and as further explained in this reply, the Court should grant Defendant's motion and deny Plaintiff's cross motion.

## I.    Defendant Complied with Local Civil Rule 7(h) and Has Not Ignored Its Precepts

Contrary to Plaintiff's assertions, Defendant complied with Local Civil Rule 7(h). Defendant provided the Court with "a statement of material facts as to which the moving party contends there is no genuine issue, which . . . include[d] references to the parts of the record relied on to support the statement." LCvR 7(h). Defendant's undisputed material facts mainly pertained to the procedural aspects of the case. *See* Def.'s Stmt., ECF No. 15-1 ¶¶ 1, 3-7. It is clear which facts Defendant contends are undisputed and how they relate to the legal issues in this FOIA case. Plaintiff has suffered no prejudice from Defendant's statement of facts as Plaintiff did not dispute most the facts asserted in Defendant's statement. *See id.* ¶¶ 1-5, 7. And as anticipated by the local rules, Plaintiff disputed the two paragraphs having to do with the application of the various FOIA exemptions including Exemptions 6, 7(C), and 7(F), so the Court may not assume that those issues are uncontroverted. *See* LCvR 7(h). In short, Defendant complied with Local Civil Rule 7(h).

In addition, Courts in this District routinely reject this argument in FOIA cases. *See, e.g.*, *Inst. for Energy Rsch. v. Fed. Energy Regul. Comm'n*, Civ. A. No. 22-3414 (CRC), 2024 WL 1091791, at *2 (D.D.C. Mar. 13, 2024) (denying summary judgment for plaintiff based on argument that agency failed to comply with Local Civil Rule 7(h) because agency affidavit adequately explained which facts agency contended were undisputed, it was clear to the Court,

and plaintiff was not prejudiced); *Sabra v. Customs & Border Prot.*, 590 F. Supp. 3d 351, 359 (D.D.C. 2022) ("Although Plaintiff contends that [the agency's] Statement fails to 'delineate which facts support its contention that the search was adequate,' the Court finds that the citation to [the agency's] affidavit is sufficient for this purpose. In other words, it is clear to the Court which facts in [the agency's] affidavit support its claim that the search was adequate." (citation omitted)); *Calderon v. Dep't of Agric.*, 236 F. Supp. 3d 96, 108 (D.D.C. 2017) ("[The plaintiff] was not prejudiced by any non-compliance, as he had a full opportunity to submit his own Statement of Material Facts in support of his cross-motion, to submit supporting declarations, and to otherwise address any factual issues he found with [the agency's] submissions.").

In fact, parties sometimes agree to dispense with the statement of facts entirely in FOIA cases due to the nature of the issues in FOIA. *See, e.g.*, Min. Order, *Tobias v. Dep't of Com.*, Civ. A. No. 22-2141 (JEB) (D.D.C. Feb. 2, 2023) ("The parties are permitted to dispense with the Local Civil Rule 7(h) requirement that they file a separate statement of undisputed facts."); Min. Order, *Gov't Accountability Project v. Dep't of Treasury*, Civ. A. No. 20-2138 (TSC) (D.D.C. Oct. 18, 2022) (same); Min. Order, *N.Y. Times Co. v. Off. of Pers. Mgmt.*, Civ. A. No. 19-3562 (ABJ) (D.D.C. Jan. 13, 2020) (same); Min. Order, *Citizens for Resp. & Ethics in Wash. ("CREW") v. Off. of Mgmt. and Budget*, Civ. A. No. 19-3488 (TFH) (D.D.C. Oct. 30, 2020) (granting joint motion to waive requirement to file statement of undisputed material facts and stating "the parties are relieved of their obligation under Local Rule 7(h)(1) to file a Statement of Undisputed Material Facts, or response thereto, in support of their forthcoming motions for summary judgment.").

Defendant complied with Local Civil Rule 7(h), and the Court should reject this argument.

**II.**     **Plaintiff Is Not Entitled to Summary Judgment, and Defendant has Shown that**
**Individual X has a Privacy Interest**

Plaintiff states in its brief that it is entitled to summary judgment because there is an "absence of evidence to support any exemption." Pl.'s Opp'n at 13.[1] That is incorrect as the agency has provided a declaration supporting its claimed exemptions. *See generally* Hudgins Decl., ECF No. 15-2. In a FOIA case, it has long been held that summary judgment may be granted "on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 584 (D.C. Cir. 2020) (quoting *Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980)). Here, as argued more specifically below, the Agency has met that standard.

In addition, Plaintiff misconstrues what Rule 56 requires in the FOIA context. A FOIA declarant satisfies Rule 56 if he or she attests to personal knowledge of the procedures used in handling a FOIA request and familiarity with the documents in question. *Sabra*, 590 F. Supp. 3d at 358. The Agency has provided the declaration of Natasha Hudgins, who is an Attorney Advisor with the Executive Office for United States Attorneys of the Department of Justice. *See* Hudgins Decl. ¶¶ 1-4. She is both familiar with the Agency's general policies and procedures for processing FOIA requests as well as what was done in this specific case. *Id.* Her declaration not only satisfies the requirement of Rule 56 but is also entitled to a presumption of good faith. *SafeCard Servs., Inc. v. Secs. and Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

Plaintiff then argues that the Agency's affidavit is inadmissible because it is based on speculation that the disclosure of Individual X's name could lead to harassment or harm and is

---

[1]     Defendant's references to page numbers from Plaintiff's brief refer to the pagination supplied by the Court's CM/ECF system in the header.

irrelevant because the issue under Exemption 7(C) is whether the disclosure reveals private information. *See* Pl.'s Opp'n at 14. Again, Plaintiff is mistaken.

Plaintiff appears to conflate the difference between the foundation for an opinion compared to the opinion itself. While Plaintiff may disagree with the Agency's conclusion that Individual X has a privacy interest in keeping his or her identity secret, the foundation for the conclusion is clear. Silk Road was used "by thousands of drug dealers and other vendors to distribute hundreds of kilograms of illegal drugs and other unlawful goods and services to well over 100,000 buyers, and to launder hundreds of millions of dollars derived from these illegal transactions." *United States v. Approximately 69,370 Bitcoin*, Civ. A. No. 20-7811, 2022 WL 888655, at *1 (N.D. Cal. Mar. 25, 2022). "The only form of payment accepted on Silk Road was Bitcoin." *Id.*

In 2020, law enforcement officers learned of fifty-five transfers that appeared to be Bitcoin that was stolen years earlier because the transactions were not noted in the Silk Road database as withdrawals from either a vendor or a Silk Road employee. *Id.* Most of this Bitcoin was then transferred to another address abbreviated as 1HQ3, and except for a relatively small transfer out in 2015, the nearly 70,000 stolen Bitcoin remained at 1HQ3 until its seizure by the government in late 2020. *Id.* "According to an investigation conducted by the Criminal Investigation Division of the Internal Revenue Service and the U.S. Attorney's Office for the Northern District of California, Individual X was the individual who hacked into Silk Road and moved the cryptocurrency to 1BAD and 1BBq, and subsequently to 1HQ3." *Id.*

On November 3, 2020, "Individual X signed a Consent and Agreement to Forfeiture with the U.S. Attorney's Office, Northern District of California in which he or she consented to the forfeiture of the subject Bitcoin." *Id.*; *see also* Consent & Agmt. to Forfeiture, ECF No. 15-7. "That same day, the government took custody of the Bitcoin from 1HQ3." *Id.* Two days later, on

4

November 5, 2020, the United States filed a complaint for forfeiture in the United States District Court for the Northern District of California to seize the subject Bitcoin. *See* Compl., *United States v. Approximately 69,370 Bitcoin*, Civ. A. No. 20-7811 (N.D. Cal. Nov. 5, 2020), ECF No. 1.

Based on these facts, which the parties do not dispute, the Agency concluded that Individual X has a privacy interest in keeping his or her identity secret. These are the facts that formed the foundation for the Agency's conclusion. *See also* Hudgins Decl. ¶¶ 9, 11, 13, 14, 19 (declaring that Hudgins consulted with the U.S. Attorney's Office for the Northern District of California, that the information requested was created as part of a civil forfeiture action because of some criminal activity, that she confirmed the identity of Individual X has not been publicized, that only designated personnel know the identity of individual X, and that disclosure of the identity of Individual X "would subject [them] to an unwarranted invasion of their personal privacy by leading to efforts of individuals to contact them directly, gain access to their personal information, or subject them to harassment or harm"). Although Plaintiff argues that the Agency speculates about the privacy interests of Individual X, without a doubt, the Agency's opinions and conclusions are rationally based on the undisputed facts in the record.

Instead of citing to and analyzing D.C. Circuit precedent, Plaintiff relies on one out-of-circuit opinion from over two decades ago that is inapposite and contrary to longstanding D.C. Circuit precedent to argue that Individual X does not have a privacy interest. In *Baltimore Sun v. Marshals Service*, 131 F. Supp. 2d 725, 727-29 (D. Md. 2001), the court did not find that there was a "persuasive privacy interest" in keeping secret the identities of those who purchased property seized by the government. Here, however, the inquiry is different because the record shows that Individual X was not some innocent purchaser of property after it was seized by the government like the individuals in *Baltimore Sun*. To the contrary, here, the record shows that Individual X

5

hacked into Silk Road and stole the Bitcoin. *69,370 Bitcoin*, 2022 WL 888655, at *1 ("According to an investigation conducted by the Criminal Investigation Division of the Internal Revenue Service and the U.S. Attorney's Office for the Northern District of California, Individual X was the individual who hacked into Silk Road and moved the cryptocurrency to 1BAD and 1BBq, and subsequently to 1HQ3."). And upon learning of the identity of Individual X, the government pursued Individual X to seize that Bitcoin.

As argued by Defendant in its opening brief and ignored by Plaintiff in its opposition, the D.C. Circuit has long held that individuals, like Individual X, "have an obvious privacy interest cognizable under Exemption 7(C) in keeping secret the fact that they were subjects of a law enforcement investigation." *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 18 F.4th 712, 718 (D.C. Cir. 2021) (quoting *CREW v. Dep't of Just.*, 854 F.3d 675, 682 (D.C. Cir. 2017)). This is because there is a longstanding recognition that "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity," that "disclosing the identity of targets of law-enforcement investigations can subject those identified to embarrassment and potentially more serious reputational harm," and that even "the mention of an individual's name in a law enforcement file . . . carries a stigmatizing connotation[.]" *Id.* (citations omitted). And "where individuals have been investigated but not charged with a crime," disclosure of material properly exempt under Exemption 7(C) "represents a severe intrusion on the privacy interests of the individual[ ] in question." *Jud. Watch, Inc. v. Nat'l Archives & Recs. Admin.*, 876 F.3d 346, 349 (D.C. Cir. 2017) (quoting *Fund for Const. Gov't v. Nat'l Archives & Recs. Serv.*, 656 F.2d 856, 866 (D.C. Cir. 1981)).

As indicated in the Hudgins declaration, the Agency confirmed that the identity of Individual X has never been publicized. Hudgins Decl. ¶ 18 ("EOUSA conducted a search to

ensure that the USAO-CAN had not publicly acknowledged the identity of Individual X in a court filing or other publication after the press release."); *id.* ¶ 19 ("Prior to the filing of this declaration, I confirmed with the USAO-CAN that the name of Individual X has not been made public. In fact, only designated USAO-CAN personnel knows the identity of individual X."). Under these facts, Individual X has a significant interest in keeping his or her identity from the public.

## III. Plaintiff Fails to Show How Disclosing the Identity of Individual X Would Advance Its Asserted Public Interest

For the first time throughout this litigation, Plaintiff has identified a public interest that is separate from its private interest in learning the identity of Individual X to try to obtain the cryptocurrency the government seized in the civil forfeiture proceeding. Plaintiff is correct that, generally, the D.C. Circuit has found that there is "a public interest in the manner in which the DOJ carries out substantive law enforcement policy (whether or not that interest outweighs any privacy interest at stake in a given case)." *CREW v. Dep't of Just.*, 746 F.3d 1082, 1093 (D.C. Cir. 2014). "[M]atters of substantive law enforcement policy . . . are properly the subject of public concern[.]" *Id.*

However, the inquiry does not end there. After identifying a public interest, assuming it is true, "a party seeking disclosure of investigative materials must still adequately support its public interest claim with respect to the *specific* information being withheld." *Jud. Watch, Inc.*, 876 F.3d at 351 (emphasis in original) (cleaned up); *see also Elec. Priv. Info. Ctr.*, 18 F.4th at 721 ("Having identified a significant public interest, [the plaintiff] must still show that 'the information is likely to advance that interest.'" (citation omitted)).

Here, Plaintiff fails to show how disclosing the identity of Individual X from the Consent and Agreement to Forfeiture would, in fact, "shed light on an agency's performance of its statutory duties' or otherwise let citizens know what their government is up to." *CREW*, 746 F.3d at 1093

(cleaned up). If the Agency were to withdraw its redaction, it would not shed light on the agency's performance, nor let the citizens know what their citizens are up to. Plaintiff would learn of a name, and that is it. The document at issue, as is readily apparent, does not reveal any extra information about Individual X. It does not reveal any thought processes, analyses, conclusions, or other information about "whether the government had the evidence but nevertheless pulled its punches" against Individual X. *CREW*, 746 F.3d at 1093. It does not reveal how the government determined that Individual X stole Bitcoin from the Silk Road, which is already somewhat public. *See generally* Haynie Decl., ECF No. 16-2. Simply put, the document reflects the name of a person who stole Bitcoin from the Silk Road then agreed to forfeit it, and nothing more.

Plaintiff accuses Defendant of speculating throughout its brief; however, it is actually Plaintiff who speculates about the public benefit of disclosing the identity of Individual X. Plaintiff speculates, for example, that Individual X might be a federal agent, and further speculates that the government may have "agreed to forgo prosecution to conceal potential corruption." Pl.'s Opp'n at 16. In another part of Plaintiff's brief, Plaintiff outright states that "the Government admits that it is concealing crime, and it might also be concealing corruption." *Id.* at 17. Plaintiff further speculates that maybe the government "has been giving criminals unusually lenient deals to make it easier to collect billions of dollars in Bitcoin for itself." [2] *Id.* at 19. Regardless of the speculation, revealing the identity of Individual X would not "shed light" on any of these theories, or how the agency performed any of its other statutory duties. *CREW*, 746 F.3d at 1093 (cleaned up). At most,

---

[2]    For accusations like these, Plaintiff "must establish more than a bare suspicion in order to obtain disclosure." *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 174 (2004). "Rather, [Plaintiff] must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." Plaintiff produced no such evidence here.

Plaintiff would get a name because the document at issue provides no further information about that name.

Plaintiff has failed to show that revealing the identity of Individual X on the Consent and Agreement to Forfeiture would advance the public interest that Plaintiff asserts exists here. By way of comparison, in *Electronic Privacy Information Center v. Department of Justice*, 18 F.4th 712, 721 (D.C. Cir. 2021), the D.C. Circuit found that the redacted portions of the Mueller report revealed information about how the Special Counsel interpreted the law, applied the law to the facts, and decided not to prosecute certain individuals whose names already appeared in other parts of the report. Thus, after performing a balancing inquiry, the D.C. Circuit found that those portions of the report should be disclosed. *Id.* at 721-22. Here, the Consent and Agreement to Forfeiture would reveal no similar interpretations, analyses, or decisions. It contains a name.

The identity of Individual X is categorically exempt, but even if it were not, Plaintiff has not shown that revealing the identity of Individual X would specifically advance its purported public interest of revealing matters of substantive law enforcement policy. For this reason, Plaintiff has failed to create a genuine dispute to defeat Defendant's motion for summary judgment.[3]

## IV.    The Significant Privacy Interest in Not Disclosing the Identity of Individual X Outweighs Any Public Interest

When balancing the interests, it becomes clear that the significant interest Individual X has in his or her privacy outweighs any purported public interest Plaintiff advances. Considering all of the information available about the Silk Road as a worldwide criminal marketplace, the people

---

[3]    Plaintiff also asserts there is a public interest in knowing "Where did the money go?" *See* Pl.'s Opp'n at 15. This simply appears to be a different way of asking who is Individual X? Anyone can see the balance and all transactions of any Bitcoin address. *See* Haynie Decl. ¶ 24, ECF No. 16-2. The Bitcoin stolen from the Silk Road was moved to addresses 1BAD and 1BBq, then 1HQ3, then an address controlled by the government. The public knows where the money went.

involved, and the prosecutions that followed after its downfall, revealing the identity of one person—Individual X—would have severe consequences. Individual X, who presently can retain a private life, would be thrust into the spotlight by being associated with this criminal marketplace. Such a disclosure would greatly affect his or her reputation among family, friends, and colleagues, assuming they do not know. At the very least, Individual X would be forced to deal with the shame, embarrassment, humiliation, and guilt that comes with being associated with a criminal marketplace known for selling illegal goods and services. This is especially more so considering how the government has never revealed whether Individual X was charged with a crime. Individual X, further, would have only limited control over the narrative in the court of public opinion. As the D.C. Circuit noted in a comparable case involving those who were charged but acquitted or had the charges dismissed:

> Individuals who are charged with a crime and ultimately prevail of course remain entitled to a version of this presumption. In the eyes of the law, they are not guilty. Unfortunately, public perceptions can be quite different. Aware of the heavy burden of proof that the government must satisfy in a criminal prosecution, many may well assume that individuals charged with a crime likely committed that crime regardless of how the case was ultimately resolved. "We all know," [the plaintiff's] counsel candidly observed at oral argument, "there are some guilty people who are not convicted." Or as former Secretary of Labor Raymond Donovan wondered after being acquitted of larceny and fraud, "Which office do I go to to get my reputation back?" Thus, if the right to privacy is, at its essence, "the right to be let alone," those who are acquitted or whose charges are dismissed have an especially strong interest in being let alone. Although the fact that such defendants were accused of criminal conduct may remain a matter of public record, they are entitled to move on with their lives without having the public reminded of their alleged but never proven transgressions.

*ACLU v. Dep't of Just.*, 750 F.3d 927, 933 (D.C. Cir. 2014) (citations omitted).

Here, compared to *ACLU*, the government has never disclosed whether Individual X has been charged with a crime. If a person has such a significant privacy interest when charged with a crime but acquitted, or when charged but the charges were dismissed, then the privacy interests of someone—like Individual X—where it has never been revealed whether they have been charged

at all is most significant. Individual X has the right to be left alone and move on with his or her life. *Cf. ACLU*, 750 F.3d at 933.

This significant interest, further, outweighs any purported public interest that Plaintiff advances. As stated above, because the redaction at issue is a name on a document that reveals little about the government, revealing the name on the document would not "shed light on an agency's performance of its statutory duties' or otherwise let citizens know what their government is up to." *CREW*, 746 F.3d at 1093 (cleaned up). Instead, if the name were revealed, the public, if truly interested, would have to find out more about Individual X's background, his or her involvement in the Silk Road, and what he or she is doing today through other means. The public —either through the media, those hurt by the Silk Road, or as is the case here, litigants filing lawsuits to try to take seized Bitcoin—would at the very least, harass and bother Individual X. At worst, they would harm Individual X. *See* Hudgins Decl. ¶ 14 ("The disclosure of Individual X's name contained in the records would subject the third party to an unwarranted invasion of their personal privacy by leading to efforts of individuals to contact them directly, gain access to their personal information, or subject them to harassment or harm."). And again, any conclusions that the public would draw about Individual X would be their own because the redaction at issue does not actually reveal anything about the government's decision to prosecute Individual X or not.

The purported public interest is further diminished by the amount of information in the public record already available about Silk Road and the government's handling of the marketplace. For example, as shown by Exhibit 2 to Plaintiff's motion, a Special Agent with the Criminal Investigation Division of the Internal Revenue Service "personally conducted the tracing and analysis of the 1HQ3 Bitcoin address using the Chainalysis Reactor blockchain analytics software." Haynie Decl. ¶ 3. "Chainalysis Reactor is an investigative software tool that connects

cryptocurrency transactions and addresses to real-world entities such as dark net markets, enabling investigators . . . to understand and interpret activity on the blockchain." *Id.* ¶ 14. After law enforcement seized the servers that contained Silk Road transaction data, they "conducted a manual analysis of the 54 bitcoin transactions at issue in this case and compared it against the data from the seized Silk Road servers, which showed a direct link between the addresses from which Individual X stole the bitcoin and Silk Road." *Id.* ¶ 3.

As a result of the government's investigation, the creator of Silk Road, Ross Ulbricht, was convicted of seven counts including conspiracy to distribute narcotics and money laundering." *69,370 Bitcoin*, 2022 WL 888655, at \*2. "He was ultimately sentenced to double life imprisonment plus forty years, without the possibility of parole." *Id.* As Plaintiff notes in its brief, the government also prosecuted a person named James Zhong, who pled guilty to committing wire fraud in September 2012 when he stole over 50,000 Bitcoin from the Silk Road. *See* Dep't of Justice, *U.S. Attorney Announces Historic $3.36 Billion Cryptocurrency Seizure and Conviction in Connection with Silk Road Dark Web Fraud* (Nov. 7, 2022), https://www.justice.gov/usao-sdny/pr/us-attorney-announces-historic-336-billion-cryptocurrency-seizure-and-conviction.

The government also prosecuted former Drug Enforcement Administration agent Carl M. Force, who pleaded guilty to extortion, money laundering and obstruction of justice; and former Secret Service agent Shaun W. Bridges, who pleaded guilty to money laundering. *See* Dep't of Justice, *Former DEA Agent Sentenced for Extortion, Money Laundering and Obstruction Related to Silk Road Investigation* (Oct. 19, 2015), https://www.justice.gov/opa/pr/former-dea-agent-sentenced-extortion-money-laundering-and-obstruction-related-silk-road; Dep't of Justice, *Former Secret Service Agent Sentenced in Scheme Related to Silk Road Investigation* (Nov. 7,

2017),    https://www.justice.gov/opa/pr/former-secret-service-agent-sentenced-scheme-related-silk-road-investigation.

Ironically, Plaintiff insinuates throughout its brief that the government may be concealing corruption by not disclosing the identity of Individual X even though it is publicly known that the government has already prosecuted the corruption of two other former agents tied to the Silk Road case: Force and Bridges. *See* Pl.'s Opp'n at 16 ("There is a compelling public interest in knowing whether X was also a federal agent, and whether the Department of Justice agreed to forgo prosecution to conceal potential corruption."); *id.* at 17 ("The public interest is at its zenith here because the Government admits that it is concealing crime, and it might also be concealing corruption."); *id.* at 18 ("Without knowing X's identity, the public cannot determine whether the Government is shielding further corruption.").

Thus, with all the information publicly available about Silk Road, how it was run, how the government took it down, and how the government prosecuted those connected to it, there is even less of a public interest in disclosing the identity of one person. *Cf. Jud. Watch, Inc. v. Nat'l Archives & Recs. Admin.*, 876 F.3d 346, 351 (D.C. Cir. 2017) (finding public interest did not outweigh privacy interest because, among other things, "voluminous information" about investigation had already been released, so the public did not need the draft indictments sought to evaluate whether the government "pulled its punches"). In this case, the information sought by Plaintiff is but one minor data point that would reveal little to nothing about "what the government is up to," *see CREW*, 746 F.3d at 1093, especially when compared to all the other publicly available data points and information that actually show how the government handled the Silk Road case.

*Electronic Privacy* is a persuasive case that settles the issue. As mentioned above, in *Electronic Privacy*, the issue was whether the government should disclose redacted portions of the

Mueller report. Ultimately, after performing a balancing test, the D.C. Circuit concluded that parts of the report should be disclosed; specifically, parts that revealed how law enforcement applied law to facts to reach a charging or declination decision. 18 F.4th at 721. However, it is noteworthy that the D.C. Circuit also agreed with the District Court that other information was appropriately withheld, namely, information about several people who were investigated for false statements and obstruction but not charged:

> The privacy interests relating to individuals investigated for but not charged with making false statements, however, remain significant. On our read, this material contains additional facts about individuals that are not disclosed elsewhere and that would be highly stigmatizing. We therefore conclude that their substantial privacy interests tip the scale in favor of non-disclosure for this category of material.

*Elec. Priv. Info. Ctr.*, 18 F.4th at 722.

Thus, disclosing the identity of Individual X would reveal none of the thoughts, analyses, or conclusions that the D.C. Circuit found should be disclosed in *Electronic Privacy*. In this case, Plaintiff wants the name of a third party implicated in a criminal investigation. But, keeping the identity of Individual X private comports with the D.C. Circuit's longstanding position, as also explained in *Electronic Privacy*, that withholding the names of third parties, who were investigated but not charged with a crime, is proper and that information must not be disclosed.

When Exemption 7(C)'s privacy concerns are present, a plaintiff "must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake." *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 172 (2004). Here, as explained in Defendant's opening brief, Plaintiff appears to have requested this information for its own sake only—to try to claim the seized Bitcoin in the separate forfeiture proceeding.

Defendant applied Exemption 7(C)[4] correctly to protect the identity of Individual X.

**V.    <u>Defendant Applied Exemption 7(F) Appropriately</u>**

Exemption 7(F) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to endanger the life or physical safety of any individual[.]" 5 U.S.C. § 552(b)(7)(F). "That language is very broad." *Pub. Emps. for Env't Resp. ("PEER") v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 205 (D.C. Cir. 2014). "The exemption does not require that a particular kind of individual be at risk of harm; any individual will do." *Id.* (internal quotation marks omitted). "Disclosure need not definitely endanger life or physical safety; a reasonable expectation of endangerment suffices." *Id.* "Unlike Exemption 7(C), which involves a balancing test, Exemption 7(F) is an absolute ban against the disclosure of certain information, and, within limits, courts defer to the agency's assessment of danger." *ACLU v. Fed. Bureau of Prisons*, Civ. A. No. 20-2320 (RBW), 2022 WL 17250300, at *18 (D.D.C. Nov. 28, 2022) (cleaned up).

Here, Plaintiff's arguments against asserting this exemption suffer from many of the same deficiencies as its arguments against asserting Exemptions 6 and 7(C). To begin, Plaintiff advances several arguments about evidentiary issues that are incorrect. For example, Plaintiff argues that the Agency declarant (Natasha Hudgins) relies on "false hearsay" and is "not competent to testify as an expert." Pl.'s Opp'n at 21-22. Plaintiff also argues that the evidence in the record does not support her opinion, specifically, because the Agency has not shown that there is an "actual threat" to Individual X's life or physical safety. Plaintiff misses the mark, again.

---

[4]    Because Defendant asserted Exemption 7(C) correctly, there is no need to analyze the same information under Exemption 6.

As explained above, the foundation for the Agency's conclusion is there, and while Plaintiff may disagree with the Agency's conclusion, without a doubt, it is supported by the record. *See supra* § II. Although Plaintiff accuses Defendant of relying on "false hearsay," Plaintiff does not identify the statement that it purports is inadmissible hearsay. Regardless, it is well known in FOIA that the rules against hearsay are lenient and do not defeat summary judgment. *Cf. DiBacco v. Dep't of Army*, 926 F.3d 827, 833 (D.C. Cir. 2019) ("Moreover, although some of the information was relayed to [the agency declarant] by her subordinates, declarations in FOIA cases may include such information without running afoul of Rule 56."). Hudgins was perfectly permitted to rely on her own research and consultations with the U.S. Attorney's Office for the Northern District of California to render her conclusions. *See* Hudgins Decl. ¶ 9 ("After further research and consultation with the USAO-CAN").

Interestingly, although Plaintiff argued in its section about Exemption 7(C) that the Agency's conclusions were "not grounded in 'the witness's perception,'" which is the standard for a lay opinion under Federal Rule of Evidence 701, Plaintiff then argues in its section about Exemption 7(F) that Hudgins "is not competent to testify as an expert witness" because she "has no expertise in evaluating danger." Pl.'s Opp'n at 21. First, "[e]very person is competent to be a witness[.]" Fed. R. Evid. 601. Second, Plaintiff provides no further explanation why any such distinction between a lay witness and an expert witness matters in a FOIA case. Regardless, if it did matter, the Agency declarant has shown that she has the "other specialized knowledge" based on "knowledge, skill, experience, training, or education" to qualify her as an expert in FOIA matters to be able to testify. Fed. R. Evid. 702.

Hudgins declares that she is an Attorney Advisor with EOUSA. Hudgins Decl. ¶ 1. She is assigned to the Freedom of Information Act and Privacy Act staff, which is the component

designated to administer both FOIA and the Privacy Act. *Id.* In that position, she has several responsibilities including acting as a liaison with other divisions and offices of the Department of Justice in responding to access requests as well as FOIA and Privacy Act litigation; reviewing FOIA and Privacy Act requests for access to records and case files located in this office and ninety-four United States Attorney's offices throughout the nation; reviewing correspondence related to FOIA and Privacy Act requests; reviewing searches conducted in response to FOIA and Privacy Act access requests; identifying the location of records responsive to FOIA and Privacy Act requests; and preparing the Agency's responses to FOIA and Privacy Act requests to ensure that determinations to withhold or release responsive records are in accordance both the FOIA and the Privacy Act, as well as with Justice Department regulations. *Id.*

Due to the nature of her official duties, she is familiar with the procedures followed by Agency in responding to FOIA requests generally as well as the actions that the Agency has taken in response to the FOIA request submitted by Plaintiff in this case. *Id.* ¶ 3. "The statements [she made] are based on [her] review of the official files and records of EOUSA, [her] own personal knowledge, and information [she] acquired through the performance of my official duties." *Id.* "[She also [has] authority to explain the rationale for EOUSA's disclosure determinations." *Id.* ¶ 2. Hudgins, simply put, is qualified. *Cf. Anthony v. Fed. Bureau of Prisons*, Civ. A. No. 22-1558 (TNM), 2024 WL 578956, at *2 (D.D.C. Feb. 13, 2024) (finding declarant qualified and had personal knowledge because her official duties included coordinating agency responses and she personally reviewed documents in the case); *Ecological Rts. Found. v. EPA*, 541 F. Supp. 3d 34, 46-49 (D.D.C. 2021) (finding declarant had personal knowledge because of his position, access to and review of records, knowledge about policies, and representation that he acquired information from other employees in the course of his official duties).

Otherwise, Plaintiff argues that Defendant has not shown an "actual threat" to Individual X's life or physical safety. Plaintiff questions when a threat was made to Individual X, what it was, how it was made, and whether it is credible today. *See* Pl.'s Opp'n at 20. Plaintiff continues, even if there were a threat to Individual X years ago because of Ulbricht, there is none now because Ulbricht is in prison. *See* Pl.'s Opp'n at 21.

However, Plaintiff misinterprets the standard under Exemption 7(F). As explained by the D.C. Circuit:

> To be clear, Exemption 7(F) does not require concrete evidence in every case. The terms "could" and "expected" in Exemption 7(F) evince congressional understanding of the many potential threats posed by the release of sensitive agency information. An agency therefore need only demonstrate that it reasonably estimated that sensitive information could be misused for nefarious ends.

*PEER*, 740 F.3d at 206; *see also Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*, 777 F.3d 518, 523-28 (D.C. Cir. 2015) (finding text of statute "suggests Congress contemplated protection beyond a particular individual who could be identified before the fact" and agency did not need to specifically identify subject of danger to assert Exemption 7(F)).

The circumstances here easily meet the 7(F) standard. As explained repeatedly throughout these briefs, Silk Road was an enormous criminal marketplace used "by thousands of drug dealers and other vendors to distribute hundreds of kilograms of illegal drugs and other unlawful goods and services to well over 100,000 buyers, and to launder hundreds of millions of dollars derived from these illegal transactions." *69,370 Bitcoin*, 2022 WL 888655, at *1. Individual X hacked into Silk Road and stole what is currently billions of dollars' worth of cryptocurrency from this criminal enterprise. *Id.* When Ulbricht, the founder of Silk Road, became aware of Individual X's online

identity,[5] he threatened Individual X for return of the cryptocurrency, but Individual X did not return the cryptocurrency. *Id.*

Although Plaintiff speculates that "Ulbricht has neither the motive nor the ability to threaten X," he could. Pl.'s Opp'n at 22. And while Plaintiff speculates that "Ulbricht—the victim—just wanted X to return the Bitcoin," that belies the record. Pl.'s Opp'n at 21. Roughly a year ago, the government charged a person named James Ellingson with narcotics trafficking and money laundering offenses. Dep't of Justice, *Silk Road Drug Vendor Who Claimed To Commit Murders-For-Hire For Silk Road Founder Ross Ulbricht Charged With Narcotics And Money Laundering Conspiracies* (May 11, 2023), https://www.justice.gov/usao-sdny/pr/silk-road-drug-vendor-who-claimed-commit-murders-hire-silk-road-founder-ross-ulbricht. Importantly, the government announced how, in "connection with his drug trafficking on Silk Road, Ellingson claimed to have arranged for the murder of five people for Silk Road founder Ross Ulbricht, . . . for which he was paid hundreds of thousands of dollars in Bitcoin." *Id.*

Plaintiff tries to paint a picture of Ulbricht as a nonviolent offender who has either forgiven or forgotten those from his past. Plaintiff argues because Ulbricht will spend the rest of his life in prison and has forfeited all his Bitcoin, he is not an actual threat. *See* Pl.'s Opp'n at 21-22. To the contrary, it is reasonable to expect that someone who is believed to have ordered murders-for-hire and who is facing a double-life sentence plus forty years is, in reality, holding a grudge against someone who stole from him but is not also serving the rest of his or her life in prison. *See* Hudgins Decl. ¶¶ 24-28. And as noted in the article at the end of Exhibit 2 attached to Plaintiff's opposition, "almost right after Silk Road 1 was taken down, Silk Road 2.0 sprouted up" and there "are plenty

---

[5]    While Ulbricht may have learned of Individual X's online identity, there is no evidence that he knows Individual X's actual identity.

of other marketplaces that serve as alternatives to Silk Road." Samuel Rubenfeld, *Silk Road Mastermind's Bitcoin Trail Wasn't Complicated*, Dow Jones Institutional News (Feb. 24, 2015, at 8:39 p.m.), ECF No. 16-2 at 18. Although Ulbricht may be in prison, there could be those who are not and are still willing and able to do his bidding. "An agency . . . need only demonstrate that it reasonably estimated that sensitive information could be misused for nefarious ends." *Pub. Emps. for Env't Resp.*, 740 F.3d at 206. Under these circumstances, disclosing the identity of Individual X meets that standard.

But even if the standard were as high as Plaintiff seems to propose—which it is not—Defendant would still meet that standard. Although Ulbricht is currently in prison, it bears mentioning that he may not always remain in prison. One of the presidential candidates for the upcoming election has vowed to pardon Ulbricht if re-elected. *See* Bradford Betz, *Trump Vows to Commute Prison Sentence of Silk Road Founder Ross Ulbricht*, FOX News (May 25, 2024, 10:07 p.m.),        https://www.foxnews.com/politics/trump-vows-commute-prison-sentence-silk-road-founder-ross-ulbricht; Peder Schaefer, *Trump Pledges to Commute Sentence of Silk Road Founder Ross Ulbricht if Elected*, Politico (last visited July 25, 2024), https://www.msn.com/en-us/news/politics/trump-pledges-to-commute-sentence-of-silk-road-founder-ross-ulbricht-if-elected/ar-BB1n3Gs5. Thus, if the government were ordered to reveal the identity of Individual X, and Ulbricht is released from prison, then Individual X would be in even more danger than he or she already is in now.

The case law, further, supports the assertion of this exemption under the circumstances. As the Court found in *Gamboa*:

> The FBI relies on Exemption 7(F) to withhold from two pages of records "specific dates, time[s], details of drug transactions, such as place, individuals involved, modus operandi, etc.," on the ground that release "would clearly reveal the identit[ies] of the individuals referenced in these records," and in this way "would

endanger their [lives] and/or physical safety." In support of this position, the FBI's declarant cites plaintiff's status as "the leader of a drug trafficking enterprise which involved money laundering and other criminal activities of a violent nature," and the multi-national breadth of the trafficking enterprise. For example, the declarant explains, "there were allegations that the plaintiff had been known to arrange murders to avenge his operation." "Given the propensity of violence in the trade of illicit substances and the conviction of the plaintiff," the FBI asserts that "there is a reasonable expectation that the release of the identifying information of such individuals would pose a danger to their life or physical safety."

Plaintiff, for his part, does little to assuage these fears. Rather, as stated previously, plaintiff's opposition focuses on the seizure and forfeiture of currency, and on defendants' alleged failure to produce information in support of the claimed forfeiture. Aside from his broad, and unsupported, assertions that defendants' FOIA withholdings were inappropriate, plaintiff fails to show that defendants' reliance on Exemption 7(F) is improper. Nor, for that matter, does plaintiff rebut defendants' credible assertions that the release of the requested information could pose a substantial safety risk to the individuals involved. For these reasons, the Court concludes that the FBI adequately justified its decision to withhold information under Exemption 7(F).

*Gamboa v. Exec. Off. for U.S. Att'ys*, 126 F. Supp. 3d 13, 21-22 (D.D.C. 2015); *see also Burnett v. DEA*, Civ. A. No. 19-0870 (CJN), 2021 WL 1209142, at *6 (D.D.C. Mar. 31, 2021), *aff'd*, No. 21-5092, 2021 WL 6102268 (D.C. Cir. Dec. 3, 2021) ("Here, the DEA has explained that disclosing the names of individuals involved in drug investigations could result in 'harassment, reprisal or physical retaliation' against those individuals—and notes that such dangers have been realized on several occasions. Plaintiff makes no serious effort to respond to this quite reasonable argument.").

Lastly, Plaintiff's comparisons to James Zhong, former agent Carl M. Force, and former agent Shaun W. Bridges are irrelevant. Plaintiff has not shown how their circumstances are comparable to Individual X, whose identity has not been disclosed.

Accordingly, Defendant asserted Exemption 7(F) appropriately.

\*      \*      \*

21

## CONCLUSION

The Court should grant Defendant's motion for summary judgment for the reasons in its opening brief, supporting materials, and as further supported by this reply. The Court should deny Plaintiff's cross motion for summary judgment.


Date:  July 25, 2024                         Respectfully submitted,
       Washington, DC
                                             MATTHEW M. GRAVES, D.C. Bar # 481052
                                             United States Attorney

                                             BRIAN P. HUDAK
                                             Chief, Civil Division

                                             By:      /s/ Sam Escher
                                                   SAM ESCHER, D.C. Bar # 1655538
                                                   Assistant United States Attorney
                                                   601 D Street, NW
                                                   Washington, DC 20530
                                                   (202) 252-2531
                                                   Sam.Escher@usdoj.gov

                                             *Attorneys for the United States of America*

22