# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**BATTLE BORN INVESTMENTS COMPANY, LLC,**

       Plaintiff,

  v.

**UNITED STATES DEPARTMENT OF JUSTICE,**

       Defendant.

**Civil Action No. 24-cv-00067 (BAH)**

# PLAINTIFF'S REPLY IN SUPPORT OF ITS
# CROSS-MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................ii

INTRODUCTION...............................................................................................................1

ARGUMENT ......................................................................................................................2

    I.    THE GOVERNMENT'S BRIEF CONFIRMS THAT BATTLE BORN IS ENTITLED
        TO SUMMARY JUDGMENT AS TO EXEMPTION 7(C)...............................................2

        A.    The Government Concedes That the Forfeiture Agreement Does Not Disclose
               Private Information.................................................................................................2

        B.    The Government Agrees There Is an Enormous Public Interest in Its Handling
               of Silk Road Forfeiture Cases ..............................................................................4

    II.    THE GOVERNMENT'S BRIEF CONFIRMS THAT BATTLE BORN IS ENTITLED
        TO SUMMARY JUDGMENT AS TO EXEMPTION 7(F)...............................................6

CONCLUSION ...................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Am. Oversight v. U.S. Gen. Servs. Admin.*,
   311 F. Supp. 3d 327 (D.D.C. 2018) .........................................................................9

*Balt. Sun v. U.S. Marshals Serv.*,
   131 F. Supp. 2d 725 (D. Md. 2001) ........................................................................2

*Burnett v. DEA*,
   2021 WL 1209142 (D.D.C. Mar. 31, 2021)............................................................9

*CREW v. Dep't of Just.*,
   746 F.3d 1082, 1093 (D.C. Cir. 2014) ...................................................................4

*CREW v. Dep't of Just.*,
   854 F.3d 675 (D.C. Cir. 2017) ...............................................................................3

*Elec. Priv. Info. Ctr. v. Dep't of Just.*,
   18 F.4th 712 (D.C. Cir. 2021) ................................................................................3

*Gamboa v. Exec. Off. for U.S. Att'ys*,
   126 F. Supp. 3d 13 (D.D.C. 2015) .........................................................................9

*Jud. Watch, Inc. v. Nat'l Archives & Recs. Admin.*,
   876 F.3d 346 (D.C. Cir. 2017) ...............................................................................3

*Lardner v. Dep't of Just.*,
   638 F. Supp. 2d 14 (D.D.C. 2009) .........................................................................5

*Sabra v. Customs & Border Prot.*,
   590 F. Supp. 3d 351 (D.D.C. 2022) .......................................................................8

*SLUSS v. Dep't of Just.*,
   2019 WL 2493447 (D.D.C. June 14, 2019)............................................................6

*Ulbricht v. United States*,
   2022 WL 2116685 (S.D.N.Y. June 13, 2022) .......................................................7

*United States v. Force IV*,
   No. 3:15-cr-00319-RS (N.D. Cal. Nov. 16, 2020)..............................................5, 8

**Statutes**

5 U.S.C. § 552(a)(4)(B) .................................................................................................1

5 U.S.C. § 552(b)(7)(F)..................................................................................................6

**Rules**

Fed. R. Civ. P. 56(c)(4) ................................................................................................8

Fed. R. Evid. 701 .........................................................................................................8

Fed. R. Evid. 702 .........................................................................................................8

Fed. R. Evid. 703 .........................................................................................................8

D.C. LCvR 7(h) .......................................................................................................1, 6

**Other Authorities**

U.S. Dep't of Justice, *U.S. Attorney Announces Historic $3.36 Billion
    Cryptocurrency Seizure and Conviction in Connection with Silk Road Dark Web
    Fraud* (Nov. 7, 2022), www.justice.gov/usao-sdny-prus-attorney-announces-
    historic-336-billion-cryptocurrency-seizure-and-conviction ....................................8

U.S. Dep't of Justice, *United States Files a Civil Action to Forfeit Cryptocurrency
    Valued at Over One Billion U.S. Dollars* (Nov. 5, 2020), www.justice.gov/usao-
    ndca-pr-united-states-files-civil-action-forfeit-cryptocurrency-valued-over-one-
    billion-us .................................................................................................................4

## <u>INTRODUCTION</u>

The Government's brief is long on argument and speculation but short on facts and the evidence needed to withstand summary judgment. The Government does not dispute any fact set forth in Battle Born's Rule 7(h) Statement, *see* ECF 16-3, and its concessions all but foreclose its legal arguments. The Government's brief is also missing two important words: *de novo*. *See* 5 U.S.C. § 552(a)(4)(B) ("[T]he court shall determine the matter de novo.").

As to Exemption 7(C), the Government concedes that the forfeiture agreement reveals no information about Individual X and that the public has an interest in monitoring the Government's treatment of Silk Road criminals. *See* ECF 19 ("Reply") at 7–8. But the Government ignores the clear implication of those concessions: X's privacy interest is not at stake; and even if it were, the public interest would justify disclosure, as courts have held in analogous circumstances. Exemption 7(C) thus cannot justify withholding.

As to Exemption 7(F), the Government effectively concedes that there was never a "threat" of physical violence—if there were, the Government surely would have disclosed it to this Court— and that the only potential danger to X was from Ross Ulbricht, who is serving a double-life sentence in prison with no opportunity for parole and has no money to hire a hitman. Nor does the Government dispute that Ulbricht's sole motive to threaten X a decade ago—*i.e.*, to get back bitcoin that X supposedly took from Silk Road—is meaningless now because X no longer has that bitcoin and Ulbricht has forfeited his interest in it. *See* ECF 16-3, ¶¶ 1–3. Undisputedly, too, no one else who took bitcoin from Silk Road has faced retaliation from Ulbricht or anyone else. *Id.*, ¶¶ 5–6. On these undisputed facts, the Government cannot show that disclosure would result in a "reasonable expectation" of harm to X. Accordingly, Exemption 7(F) cannot justify withholding.

The Court should grant summary judgment to Battle Born.

**ARGUMENT**

**I.    THE GOVERNMENT'S BRIEF CONFIRMS THAT BATTLE BORN IS ENTITLED TO SUMMARY JUDGMENT AS TO EXEMPTION 7(C).**

Exemption 7(C) cannot authorize withholding here because the forfeiture agreement reveals no private information about X, and even if it did, any privacy interest would be outweighed by the enormous public interest in knowing who possessed the missing bitcoin and whether the Government gave that person lenient treatment. ECF 16 ("Opp.") at 8–14. The Government concedes that X's forfeiture agreement "does not reveal any extra information about Individual X." Reply 8. And it agrees there is a tremendous "'public interest in the manner in which the DOJ carries out substantive law enforcement policy'" with respect to Silk Road. *Id.* at 7 (citation omitted). As a matter of law, therefore, Exemption 7(C) provides no basis for withholding.

**A.    The Government Concedes That the Forfeiture Agreement Does Not Disclose Private Information.**

The Government concedes that the disputed forfeiture agreement "does not reveal any extra information about X. It does not reveal any thought processes, analyses, conclusions, or other information about 'whether the government had the evidence but nevertheless pulled its punches' against Individual X." Reply 8 (citation omitted). X's mere acquiescence in the forfeiture—voluntarily, without any stated coercion or government concession—reveals nothing personal about X and hence does not give rise to a "persuasive privacy interest." *Balt. Sun v. U.S. Marshals Serv.*, 131 F. Supp. 2d 725, 729 (D. Md. 2001); *see* Opp. 8–9.

The Government contends that *Baltimore Sun* is inapposite because it involved purchasers of forfeited property, whereas X supposedly was not an "innocent purchaser." Reply 5–6. But the forfeiture agreement does not allege that X stole the bitcoin, nor does it even mention Silk Road. *See* ECF 15-7. It simply identifies the bitcoin wallet and explains that X "agrees and consents to

2

[its] forfeiture"—without so much as a hint as to how X may have acquired it. *Id.* The Government may suspect the bitcoin was stolen, but the forfeiture agreement does not say that.

The Government's own authorities are inapposite. Those cases stand for the unremarkable proposition that there is a privacy interest in "*new* information about a person's conduct, going beyond the facts [already] in the public record." *CREW v. Dep't of Just.*, 854 F.3d 675, 682 (D.C. Cir. 2017) (emphasis added); *accord Elec. Priv. Info. Ctr. v. Dep't of Just.*, 18 F.4th 712, 719 (D.C. Cir. 2021) (individuals have privacy interest in non-disclosure of "new facts that would be stigmatizing"); *Jud. Watch, Inc. v. Nat'l Archives & Recs. Admin.*, 876 F.3d 346, 349 (D.C. Cir. 2017) (holding that individual "retains a distinct privacy interest in the *contents* of the investigative files" where fact of government investigation was publicly known) (cleaned up) (emphasis in original). The forfeiture agreement here is distinguishable because—as the Government concedes—it "does not reveal any extra information about Individual X." Reply 8. It reveals only the identity of the person who consented to the forfeiture of property worth $4 billion.

Notably, X himself did not assert a privacy interest by asking the Government to withhold his name from the public record. As Battle Born explained—and the Government does not dispute—the forfeiture agreement's "integration clause proves that X <u>did not ask the Government to conceal his identity</u>." Opp. 9 (emphasis added). X voluntarily signed a government contract forfeiting his interest in the bitcoin with no strings attached. X understood that the document would be part of a judicial forfeiture proceeding with a presumption of public access, but he made no request for privacy. The Government therefore cannot meet its burden of demonstrating a privacy interest under Exemption 7(C).

**B.**      **The Government Agrees There Is an Enormous Public Interest in Its Handling of Silk Road Forfeiture Cases.**

Moreover, any privacy interest would be outweighed by the tremendous public interest in disclosure. The Government concedes the "'public interest in the manner in which the DOJ carries out substantive law enforcement policy.'" Reply 7 (citing *CREW v. Dep't of Just.*, 746 F.3d 1082, 1093 (D.C. Cir. 2014)); *see also* ECF 16-3, ¶¶ 7–10 (citing undisputed public interests). That interest is paramount where, as here, the disclosure concerns how the Government conducted itself with respect to the "largest seizure of cryptocurrency in the history of the United States." U.S. Dep't of Justice, *United States Files a Civil Action to Forfeit Cryptocurrency Valued at Over One Billion U.S. Dollars* (Nov. 5, 2020), www.justice.gov/usao-ndca-pr-united-states-files-civil-action-forfeit-cryptocurrency-valued-over-one-billion-us. The Government's primary response is that "revealing the identity of Individual X would not 'shed light' on" any Government activity. *See* Opp. 7–9 (citation omitted). That is wrong for several reasons.

*First*, revealing the identity of X would "shed light" on whether the Government granted X lenient treatment in response to X consenting to the forfeiture. As Battle Born explained—and the Government does not dispute—the Government has a pattern of granting leniency to persons who forfeit valuable Silk Road bitcoin. *See* Opp. 13–14. James Zhong, for instance, received just one year in prison despite stealing bitcoin worth billions of dollars. *See id.* at 13. The Government admits it "has never disclosed whether Individual X has been charged with a crime." Reply 10. When the name of X is disclosed, the public can evaluate whether X ever faced charges or whether the Government gave X a free pass in connection with the largest-ever bitcoin forfeiture.

*Second*, revealing X's name would shed light on whether X is or was a federal agent and hence whether the Government is concealing corruption. The Government's assertion (at 8 n.2) that there is no "evidence" of corruption ignores its own claim that X's forfeiture was "related" to—

meaning it involved a "linked" investigation concerning "similar events, occurrences, transactions, and property," "similar allegations and investigative activity," and "the same period of conduct" as—the criminal prosecution of two corrupt federal agents who stole Silk Road bitcoin. Notice, *United States v. Force IV*, No. 3:15-cr-00319-RS (N.D. Cal. Nov. 16, 2020), ECF 182. Having already publicly connected X to corrupt federal agents, the Government cannot deny that there is a public interest in knowing whether X, too, was a federal agent.

Battle Born explained (at 12) that FOIA requires disclosure of "the information the [Department of Justice] had before it when making" important punishment "determinations so that the public can monitor whether the agency is correctly doing its job." *Lardner v. Dep't of Just.*, 638 F. Supp. 2d 14, 34 (D.D.C. 2009). But the Government does not address *Lardner* or any of the other numerous authorities cited by Battle Born, all of which required disclosure—despite significant privacy interests—because the information would enable the public to better monitor a government agency. *See* Opp. 12 (citing authorities). The Government's retort (at 9) that the forfeiture agreement only "contains a name" ignores that X's name would reveal important context about how the Government has exercised its duties regarding a historically large bitcoin theft—including whether the Government let X off entirely or whether X was a federal agent engaged in corruption.

The Government's view (at 11) that "Individual X has the right to be left alone and move on with his or her life" is both unsupported and misplaced. When the Government has apparently allowed one of the most prolific bitcoin thieves of all time to walk free while it takes property worth $4 billion, FOIA does not allow the Government to evade public accountability by shielding its actions under the guise of privacy concerns.

Because the Government has failed to raise a triable issue, Battle Born is entitled to summary judgment as to Exemption 7(C).

## II.  THE GOVERNMENT'S BRIEF CONFIRMS THAT BATTLE BORN IS ENTITLED TO SUMMARY JUDGMENT AS TO EXEMPTION 7(F).

The Government also cannot satisfy its burden under Exemption 7(F) of proving that disclosure "could reasonably be expected to endanger [X's] life or physical safety." 5 U.S.C. § 552(b)(7)(F). The Government's brief concedes that the only person who might pose a danger to X is Silk Road founder Ross Ulbricht. *See* Opp. 17 (explaining there is no "expectation of danger from anyone else"); Reply 15–21 (focusing solely on Ulbricht and not disputing this point); ECF 16-3, ¶ 4 (X "does not reasonably face any threat from other Silk Road users"). Yet the Government offers no admissible evidence to support its speculation that Ulbricht might threaten X. Indeed, the evidence is all to the contrary. A "court will accord deference to the agency's assessment of danger … *only when* it supplies facts to support it." *SLUSS v. Dep't of Just.*, 2019 WL 2493447, at *7 (D.D.C. June 14, 2019) (emphasis added). The Government has failed to do so here.

Several critical facts are not disputed. As Battle Born's Rule 7(h) Statement details, (1) Ulbricht made some sort of unspecified "threat" to X ten years ago solely "to persuade him to return [b]itcoin to Ulbricht"; (2) now that X no longer has that bitcoin and Ulbricht has forfeited his entitlement to any Silk Road bitcoin, "Ulbricht has no motive to threaten Individual X today"; and (3) "[t]here is no evidence that Ulbricht or anyone else retaliated against James Zhong" after he stole bitcoin from Silk Road. ECF 16-3, ¶¶ 2–3, 5. These facts are not disputed, as the Government neither filed a Rule 7(h) response nor disputed any of them in its reply brief.

Given these undisputed facts, no reasonable jury could find that X reasonably faces any threat from Ulbricht. The Government does not dispute that it has failed to substantiate "when a threat was made to Individual X, what it was, how it was made, and whether it is credible today." Reply at 18. Accordingly, there is no evidence X has ever been at risk of any *physical* harm, as Exemption 7(F) requires. But the Government's speculation does not stop there. While Ulbricht

might have threatened X ten years ago, Ulbricht poses zero threat today, as he will spend the rest of his life in prison, serving a double-life sentence (plus forty years) with no possibility of parole. *See* Opp. 3, 17. The Government's sheer speculation (at 20) that Ulbricht might be released from prison *if* Donald Trump were elected as President and *if* Trump were then to pardon Ulbricht simply does not amount to a reasonable *expectation* of future danger. The Government's further speculation (at 20) that Ulbricht might pay someone "to do his bidding" ignores that Ulbricht no longer has any money after being ordered to pay the Government over $180 million in civil penalties. *See Ulbricht v. United States*, 2022 WL 2116685 at *2 (S.D.N.Y. June 13, 2022).

There is yet another step in the Government's chain of speculation here: While the Government theorizes that Ulbricht might have a reason to harm X today, the actual record renders that theory implausible. Undisputedly, Ulbricht's *only* interest in X was to get the bitcoin back. ECF 16-3, ¶ 2. No evidence suggests that Ulbricht would still have this interest in X ten years later. X no longer has any Silk Road bitcoin to give back to Ulbricht; and even if he did, Ulbricht has given up any interest he ever had in that bitcoin. *See id.*, ¶ 3. The Government guesses that Ulbricht could be "holding a grudge against" X. Reply 19. But that implausible speculation (upon layers of other speculation) cannot be credited—especially when James Zhong and two federal agents have been convicted of stealing Silk Road bitcoin, yet it is undisputed that none of them was ever harmed by "Ulbricht or anyone else." *See* ECF 16-3, ¶¶ 5–6.

The Government's suggestion (at 21) that X is not comparable to these other individuals is baseless. In fact, Zhong pleaded guilty to stealing bitcoin worth over $3.3 billion by "creating a string of … Silk Road accounts" and "triggering over 140 transactions in rapid succession in order to trick Silk Road's withdrawal-processing system into releasing approximately 50,000 Bitcoin … into ZHONG's accounts" in September 2012. U.S. Dep't of Justice, *U.S. Attorney Announces*

*Historic $3.36 Billion Cryptocurrency Seizure and Conviction in Connection with Silk Road Dark Web Fraud* (Nov. 7, 2022), www.justice.gov/usao-sdny-prus-attorney-announces-historic-336-billion-cryptocurrency-seizure-and-conviction. That is the same crime X is suspected of committing: *i.e.*, taking bitcoin by "us[ing] a vulnerability" "that allowed [him] to withdraw funds from Silk Road" and transferring them to his own bitcoin addresses. ECF 16-2, ¶ 6. And as explained above, the Government itself says that X's forfeiture is "related" to the prosecutions of Force and Bridges. *See* Notice, *United States v. Force IV*, No. 3:15-cr-00319-RS (N.D. Cal. Nov. 16, 2020), ECF 182.

Unable to withstand summary judgment by marshaling competent evidence, the Government instead focuses on defending its reliance on the inadmissible speculation in FOIA attorney Natasha Hudgins's affidavit. *See* Reply 16–18. But as Battle Born explained (Opp. 15–16), Ms. Hudgins cannot *testify* that X's life is in grave danger because such testimony would not be "rationally based on the witness's perception," as required for such a lay witness opinion, Fed. R. Evid. 701; she has no specialized knowledge for evaluating the credibility or risk of threats, Fed. R. Evid. 702; and she did not even establish a factual foundation by telling the Court what threat was made, Fed. R. Evid. 703.[1] Nor does the Government identify or even suggest the existence of any

---

[1] The Government wrongly asserts that Battle Born "misconstrues what Rule 56 requires in the FOIA context," citing a case in which the court allowed a witness to attest to the adequacy of an agency's FOIA search process. Reply 3 (citing *Sabra v. Customs & Border Prot.*, 590 F. Supp. 3d 351, 358 (D.D.C. 2022)). The Government is the party misconstruing the law. That courts may allow a summary witness to testify about search *procedures* does not suspend the requirements that a declaration be "made on personal knowledge, set out facts that would be admissible in evidence, and show that the … declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The Court therefore cannot credit assertions that are based on speculation or opinion rather than "personal knowledge" of "facts that would be admissible" through a witness "competent to testify on the matters asserted." *Id.*

Moreover, the record shows that Ms. Hudgins possesses no unique knowledge on which to base an opinion. The FOIA request asked for one document; the Executive Office for U.S. Attorneys

other person who might be competent to overcome these fatal flaws. The Government "offers only

… speculation." *Am. Oversight v. U.S. Gen. Servs. Admin.*, 311 F. Supp. 3d 327, 346 (D.D.C. 2018)

(Howell, J.) (granting FOIA plaintiff summary judgment). Accordingly, there is no information

about a "threat" for this Court to weigh in its *de novo* review. There is no there there.

The Government's failure to produce any meaningful evidence of danger to X readily

distinguishes this case from its two primary authorities. In one, the violent leader of a drug ring

sought disclosure of the identities of those involved in the specific "'drug transactions'" that had

led to his arrest and conviction. *Gamboa v. Exec. Off. for U.S. Att'ys*, 126 F. Supp. 3d 13, 21 (D.D.C.

2015). Unlike in that case, however, there is no evidence X was involved in Ulbricht's arrest or

conviction, nor has the Government made any "credible assertions" of retaliation here. *Id.* at 22.

The second case found Exemption 7(F) established where the Government actually substantiated

the threat of retaliation and the "[p]laintiff ma[de] no serious effort to respond." *Burnett v. DEA*,

Civ. A. No. 19-0870 (CJN), 2021 WL 1209142, at *6 (D.D.C. Mar. 31, 2021), *aff'd*, No. 21-5092,

2021 WL 6102268 (D.C. Cir. Dec. 3, 2021). That case has no bearing here, where the Government's

speculation is not even substantiated and has been rebutted regardless.

---

(EOUSA) sent a request for the document to the U.S. Attorney's Office for the Northern District of
California (USAO); the USAO sent EOUSA one document; and EOUSA disclosed the one document
with X's name redacted. *See* Hudgins Decl., ECF No. 15-2, at 3. There is nothing else in EOUSA's
files and nothing more for Ms. Hudgins to testify about. All the rest is speculation. Ms. Hudgins
demonstrates no basis for knowledge about any threat to X beyond what is in the public record.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Battle Born's cross-motion for summary judgment.

Date:   August 2, 2024                    Respectfully submitted,

*/s/ Rod J. Rosenstein*
Rod J. Rosenstein (D.C. Bar No. 432439)
KING & SPALDING LLP
1700 Pennsylvania Ave., NW
Suite 900
Washington, DC 20006
Telephone: (202) 737-0500
rrosenstein@kslaw.com

*Counsel for Plaintiff*
*Battle Born Investments Company, LLC*

10