## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

BATTLE BORN INVESTMENTS
COMPANY, LLC,

                Plaintiff,

                v.

U.S. DEPARTMENT OF JUSTICE,

                Defendant.

</td><td>

Civil Action No. 24-00067

Judge Beryl A. Howell

</td></tr>
</table>

## MEMORANDUM OPINION

Plaintiff Battle Born Investments Company, LLC ("Battle Born") seeks disclosure, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, by defendant, the U.S. Department of Justice ("DOJ"), of a document that would reveal the name of the individual— referred to by the parties as "Individual X"—who signed a Consent and Agreement to Forfeiture ("Consent Agreement") with the United States Government authorizing "the largest cryptocurrency seizure in history." Pl.'s Mem. in Opp'n to Def.'s Mot. Summ. J., & Pl.'s Cross-Mot. Summ. J. & Mem. Supp. Thereof ("Pl.'s Opp'n") at 1, ECF No. 16; *see also* Compl. ¶¶ 13, 15, ECF No. 1; Def.'s Mot. for Summ. J. & Mem. Supp. Thereof ("Def.'s Mem.") at 5, ECF No. 15 ("The parties have conferred and agree that the sole issue is the identity of Individual X referenced in one document: the November 3, 2020, Consent and Agreement to Forfeiture."); Def.'s Statement of Material Facts Not in Genuine Dispute Supp. Mot. Summ. J. ("Def.'s SUMF") ¶ 3, ECF No. 15-1 ("At issue is one document: the November 3, 2020, Consent and Agreement to Forfeiture with the U.S. Attorney's Office, Northern District of California, referenced in the FOIA request."); Pl.'s Counter-Statement & Pl.'s Statement of Material Undisputed Facts Supp. Pl.'s Cross-Mot. Summ. J. ("Pl.'s SUMF") ¶ 3, ECF No. 16-3 (not disputing defendant's

characterization of the case as seeking this single document).  DOJ has released a redacted version

of the document but resists identifying Individual X, citing FOIA Exemptions 6, 7(C), and 7(F), 5

U.S.C. §§ 552(b)(6), (7)(C), (7)(F).  Battle Born contests the application of each exemption to

redact Individual X's name.  *See generally* Pl.'s Opp'n; Pl.'s Reply Supp. Cross-Mot. Summ. J.

("Pl.'s Reply"), ECF No. 20.

For the reasons set out below, DOJ properly invoked Exemption 7(C) to withhold

Individual X's name.  Accordingly, DOJ's motion for summary judgment is granted, and Battle

Born's cross-motion for summary judgment is denied.[1]

# I.    BACKGROUND

Summarized below is factual background as context for the FOIA request at issue,

derived largely from *United States v. Approximately 69,370 Bitcoin*, No. 20-cv-7811-RS, 2022

WL 888655, at *1–2 (N.D. Cal. Mar. 25, 2022), and *United States v. Ulbricht*, 858 F.3d 71, 82–

83 (2d Cir. 2017), both of which decisions are extensively relied upon by the parties.  *See* Def.'s

Mem. at 1–4; Pl.'s Opp'n at 3, 14.

## A.    Silk Road and the Stolen Bitcoin

The document at issue in this case originated from an enforcement operation against the

online marketplace Silk Road, which existed as a "sprawling black market bazaar" for illegal goods

and services between 2011 and October 2013.  *69,370 Bitcoin*, 2022 WL 888655, at *1; *see also*

*Ulbricht*, 858 F.3d at 82.  Transactions on the marketplace were conducted exclusively using

Bitcoin, "an anonymous but traceable digital currency."  *Ulbricht*, 858 F.3d at 82–83.  Silk Road

---

[1]    Since DOJ's proper invocation of Exemption 7(C) to withhold Individual X's name resolves the pending motions, consideration of other contested exemptions is unnecessary.

was seized and shut down by the federal government in October 2013.  *Id.* at 83; *69,370 Bitcoin*, 2022 WL 888655, at *1.

In 2020, federal law enforcement officers conducting further investigations of Silk Road discovered that an individual, identified only as Individual X, had, in 2012, hacked into Silk Road and stolen over 70,000 Bitcoins.  *69,370 Bitcoin*, 2022 WL 888655, at *2; *see also* Compl. ¶ 10. The stolen Bitcoins were first kept in two separate Bitcoin addresses, abbreviated as 1BAD and 1BBq, and later almost all were transferred to a third Bitcoin address, abbreviated as 1HQ3.  *69,370 Bitcoin*, 2022 WL 888655, at *2.  "[N]early 70,000 Bitcoin remained at 1HQ3" from 2013 until the government seized that address and the Bitcoin held there in late 2020, *id.*, during which period the value of the Bitcoin at 1HQ3 increased from approximately $14 million to over $3 billion, *id.*; Compl. ¶ 9.  Law enforcement officers investigating this theft also discovered that, before his arrest and conviction, Silk Road creator Ross Ulbricht "became aware of Individual X's online identity and threatened Individual X for return of the cryptocurrency to Ulbricht."  *69,370 Bitcoin*, 2022 WL 888655, at *1–2.  Despite this threat, the Bitcoin was not returned to Ulbricht.  *Id.* at *2.

In November 2020, "Individual X signed a Consent and Agreement to Forfeiture with the U.S. Attorney's Office, Northern District of California"—the document and signature sought by Battle Born in this case—consenting to the forfeiture of the Bitcoin stored at the 1HQ3 address. *Id.*; *see also* Compl. ¶ 7.  The government took custody of that Bitcoin the same day the Consent Agreement was signed, *69,370 Bitcoin*, 2022 WL 888655, at *2, and shortly thereafter filed a civil forfeiture action in the United States District Court for the Northern District of California to formally take ownership of the forfeited Bitcoin, Def.'s Mem. at 3.

### B.    Plaintiff's Claimed Connection to the Forfeited Bitcoin

In March 2018, over two years before the government filed its forfeiture action against the Bitcoin held at the 1HQ3 address, Battle Born entered into an agreement to purchase the assets of

the Chapter 7 bankruptcy estate of an individual named Raymond Ngan.  *Id.* (citing *United States v. Battle Born Invs. Co., LLC*, No. 22-16348, 2023 WL 5319258, at *1 (9th Cir. Aug. 18, 2023)). When the United States brought its forfeiture action, Battle Born filed a claim in the case asserting that Individual X was Ngan or someone "associated with him," and further claiming that Battle Born was the innocent owner of the nearly 70,000 Bitcoin from 1HQ3 due to its purchase of Ngan's bankruptcy estate more than two years earlier.  *Id.* (citing *Battle Born Invs. Co.*, 2023 WL 5319258, at *1).  Two other entities also filed claims contending that Individual X was Ngan or an associate of Ngan and asserting ownership of the Bitcoin as judgment creditors of Ngan.  *Id.* (citing *Battle Born Invs. Co.*, 2023 WL 5319258, at *1).[2]

The District Court in the forfeiture action granted the government's motion to strike these ownership claims, finding that Battle Born's claim that "Ngan may have had some association with Individual X" to be "sheer speculation," with no proof offered to suggest how Ngan "would have come into ownership of the Bitcoin in the 1HQ3 wallet, much less lawful ownership that would have made the Bitcoin part of the bankruptcy estate."  Def.'s Mem. at 4 (quoting *69,370 Bitcoin*, 2022 WL 888655, at *5).  This decision was affirmed by the Ninth Circuit.  *Battle Born Invs. Co.*, 2023 WL 5319258, at *2–3.

### C.    The FOIA Request and the Instant Litigation

Roughly two months after the Ninth Circuit affirmed the striking of Battle Born's claim to ownership of the Bitcoin seized from the 1HQ3 address and ultimately forfeited to the United States, Battle Born filed the FOIA request at issue in this litigation, requesting:

> (1) [T]he name of the person who signed a Consent and Agreement to Forfeiture with the U.S. Attorney's Office, Northern District of California, on or about November 3, 2020, concerning a cryptocurrency wallet referred

---

[2]    The two other entities, First 100, LLC ("First 100"), and 1st One Hundred Holdings, LLC ("1st One Hundred"), in March 2017, "jointly and severally obtained" a money judgment against Ngan for roughly $2.2 billion dollars.  Def.'s Mem. at 3 (citing *Battle Born Invs. Co.*, 2023 WL 5319258, at *1).

to as 1HQ3 in *United States v. Approximately 69,370 Bitcoin, et al.*, Case
No. 3:20-cv-7811-RS (N.D. Cal.); (2) the name of any person believed to
have owned, possessed, or controlled that wallet; and (3) the name of the
person referred to as "Individual X" in that case.

Battle Born Investments Company, LLC FOIA Req., ECF No. 15-3; *see also* Compl. ¶ 13.  After

the government failed timely to respond to this FOIA request, Battle Born filed the instant action

on January 8, 2024.  Compl.; *see also* Pl.'s Opp'n at 6; Def.'s Mem. at 5.

As noted, the parties agree that disclosure of the single document consisting of the

November 3, 2020, Consent Agreement signed by Individual X, is "the sole issue" in this case.

Def.'s Mem. at 5; Pl.'s Opp'n at 6; Joint Status Rep. at 1, ECF No. 12.  Initially, DOJ withheld the

entire document pursuant to multiple FOIA exemptions.  Joint Status Rep. at 1.  DOJ subsequently

learned, however, that a redacted version of the document had previously been released publicly

and, on that basis, no longer seeks to withhold the entire document, but rather only the redacted

portions, including Individual X's name and signature, pursuant to FOIA Exemptions 6, 7(C), and

7(F), 5 U.S.C. §§ 552(b)(6), (7)(C), (7)(F).  FOIA Suppl. Resp., ECF No. 15-6; *see also* Def.'s

Mem. at 5 n.1.

## II.    LEGAL STANDARD

FOIA "requires federal agencies to make records publicly available upon request unless

one of nine exemptions applies." *Emuwa v. U.S. Dep't of Homeland Sec.*, 113 F.4th 1009, 1012

(D.C. Cir. 2024).  The law balances two important-but-sometimes competing interests: "pierc[ing]

the veil of administrative secrecy" to "open agency action to the light of public scrutiny," *Cabezas

v. FBI*, 109 F.4th 596, 602 (D.C. Cir. 2024) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173

(1991)), and protecting "legitimate governmental and private interests [that] could be harmed by

release of certain types of information," *Jud. Watch, Inc. v. U.S. Dep't of Def.*, 913 F.3d 1106,

1108 (D.C. Cir. 2019) (quoting *FBI v. Abramson*, 456 U.S. 615, 621 (1982)).  To accommodate

both goals, FOIA's nine enumerated exemptions "are to be 'narrowly construed,'" *Cabezas*, 109 F.4th at 602 (quoting *Milner v. Dep't of the Navy*, 562 U.S. 562, 565 (2011)), but still given "meaningful reach and application," *id.* (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)).   The federal agency invoking a FOIA exemption to withhold requested information bears the burden of establishing that the claimed exemption applies.   *Watkins L. & Advoc., PLLC v. U.S. Dep't of Justice*, 78 F.4th 436, 450 (D.C. Cir. 2023).

Federal Rule of Civil Procedure 56 entitles a party to summary judgment "only if there is no genuine issue of material fact and judgment in the movant's favor is proper as a matter of law." *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (citation omitted); *see also* Fed. R. Civ. P. 56(a).   Most FOIA cases "can be resolved on summary judgment."   *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).   In ruling on summary judgment in a FOIA case, "courts may rely on non-conclusory agency affidavits demonstrating the basis for withholding if they are not contradicted by contrary evidence in the record or by evidence of the agency's bad faith."   *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 361 (D.C. Cir. 2021) (citation omitted); *see also DiBacco v. U.S. Dep't of the Army*, 926 F.3d 827, 834 (D.C. Cir. 2019) ("Summary judgment is warranted based on the agency's affidavit if it describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith." (internal quotations, citation omitted)).   "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'"   *Jud. Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) (quoting *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011)).

### III.    DISCUSSION

DOJ moves for summary judgment, pursuant to Federal Rule of Civil Procedure 56 and D.D.C. Local Civil Rule 7(h), Def.'s Mem. at 1, arguing that Exemptions 6 and 7(C) were correctly applied to withhold Individual X's name, *see id.* at 6–9; Def.'s SUMF ¶ 8.  Battle Born counters that DOJ's invocation of Exemption 7(C) was improper because the requested disclosure does not concern private information, Pl.'s Opp'n at 8–9, and, even if Individual X retains some privacy interest in his or her name, this interest is "outweighed by the tremendous public interest in disclosure," *id.* at 9; *see also id.* at 10–14.[3]  For the reasons explained below, the government properly invoked Exemption 7(C) to withhold Individual X's name from disclosure.

### A.    Exemption 7(C)

FOIA Exemption 7(C), along with Exemption 6, may be invoked by the government to protect individual privacy interests.  Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  Exemption 7(C) excludes from disclosure "records or information compiled for law enforcement purposes, 'but only to the extent that the production of such [materials] . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy.'"  *U.S. Dep't of Justice v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 755–56 (1989) (alteration,

---

[3]    As a threshold matter, Battle Born argues that the government failed to comply with D.D.C. Local Civil Rule 7(h) by not "includ[ing] references to the parts of the record relied on to support the statement" of undisputed material facts, Pl.'s Opp'n at 7 (quoting D.C. LCvR 7(h)(1)), and that summary judgment should be denied to DOJ on that basis, *id.*  As the government correctly notes, this argument is "routinely reject[ed] . . . in FOIA cases," Def.'s Reply Supp. Mot. Summ. J. & Opp'n to Pl.'s Cross Mot. Summ. J. ("Def.'s Reply") at 1–2, ECF No. 18 (citing *Inst. for Energy Rsch. v. Fed. Energy Regul. Comm'n*, No. 22-cv-3414 (CRC), 2024 WL 1091791, at *2 (D.D.C. Mar. 13, 2024); *Sabra v. U.S. Customs & Border Prot.*, 590 F. Supp. 3d 351, 359 (D.D.C. 2022); *Calderon v. U.S. Dep't of Agric.*, 236 F. Supp. 3d 96, 108 (D.D.C. 2017)), when, as here, the parties make amply clear in briefing and thus make "clear to the Court which facts in [the government's] affidavit" support its contention that the exemptions were properly invoked, *Sabra*, 590 F. Supp. 3d at 359.  Furthermore, Battle Born "was not prejudiced by any non-compliance," given that Battle Born "had a full opportunity to submit [its] own Statement of Material Facts in support of [its] cross-motion, to submit supporting declarations, and to otherwise address any factual issues [it] found with [the government's] submissions."  *Calderon*, 236 F. Supp. 3d at 108.  Battle Born's argument is therefore rejected as a basis for resolving the pending motions.

omission in original) (quoting 5 U.S.C. § 552(b)(7)(C)).  While both exemptions protect similar interests and contain "comparable language," Exemption 7(C)'s language, and thus its standard, is "broader."  *Id.* at 756.  Interpreting both exemptions, the D.C. Circuit has held that Exemption 7(C) "establishes a lower bar for withholding material" than does Exemption 6.  *ACLU v. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011) (citations omitted); *see also Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 165–66 (2004).  Therefore, when an agency seeks to withhold records "compiled for law enforcement purposes" as implicating personal privacy, only Exemption 7(C) need be considered, since "all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)."  *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011); *see also Kowal v. U.S. Dep't of Justice*, 107 F.4th 1018, 1030 (D.C. Cir. 2024) ("When, as here, the request is for records compiled for law enforcement purposes, the information protected by Exemption 6 is a subset of that protected by Exemption 7(C), so we need only analyze the latter." (citing *Roth*, 642 F.3d at 1173)).

To fall within the protection of Exemption 7(C), a record must "be created, gathered, or used by an agency for law enforcement purposes at some time before the agency invokes the exemption."  *Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mex.*, 740 F.3d 195, 203 (D.C. Cir. 2014); *see also* 5 U.S.C. § 552(b)(7).  Once this threshold requirement has been met, the "type of privacy interest at stake" must be balanced against the "public interest in release of the type of information involved" to determine whether any invasion of privacy would be "unwarranted."  *Schrecker v. U.S. Dep't of Justice ("Schrecker I")*, 254 F.3d 162, 166 (D.C. Cir. 2001) (citing *Reps. Comm.*, 489 U.S. 749); *see also ACLU v. U.S. Dep't of Justice*, 750 F.3d 927, 929 (D.C. Cir. 2014) ("Determining whether an invasion of privacy is 'unwarranted' within the meaning of Exemption 7(C) requires . . . 'balanc[ing] the public interest

in disclosure against the interest [in privacy] Congress intended the Exemption to protect.'"
(alterations in original) (quoting *Reps. Comm.*, 489 U.S. at 776)); *Roth*, 642 F.3d at 1174.  The
claimed privacy interest "belongs to the individual," rather than the government agency invoking
the Exemption.  *Hawkins v. FBI*, No. 20-cv-1483 (BAH), 2022 WL 905577, at *6 (D.D.C. Mar.
2, 2022) (citing *Reps. Comm.*, 489 U.S. at 763–65).  The only valid public interest, meanwhile, "is
one that focuses on 'the citizens' right to be informed about what their government is up to.'"
*Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (internal quotation omitted)
(quoting *Reps. Comm.*, 489 U.S. at 773).  The party requesting information through FOIA "must
(1) 'show that the public interest sought to be advanced is a significant one, an interest more
specific than having the information for its own sake,' and (2) 'show the information [sought] is
likely to advance that interest.'"  *Boyd v. Crim. Div. of U.S. Dep't of Justice*, 475 F.3d 381, 387
(D.C. Cir. 2007) (quoting *Favish*, 541 U.S. at 172).  A claimed public interest in exposing
government wrongdoing cannot rest on "a bare suspicion in order to obtain disclosure" but must
instead be supported by "evidence that would warrant a belief by a reasonable person that the
alleged Government impropriety might have occurred."  *Favish*, 541 U.S. at 174.

**B.    The Disclosure Sought is Protected by FOIA Exemption 7(C)**

As an initial matter, Battle Born does not dispute that the Consent Agreement at issue was
created, compiled, and used for law enforcement purposes.  *See generally* Pl.'s Opp'n; *see also id.*
at 8 (acknowledging the "law enforcement purposes" threshold question but not addressing it in
this case).  DOJ's affiant easily demonstrates that this threshold requirement has been satisfied,
attesting that the "information requested was created as part of a civil forfeiture action" initiated
and pursued by the U.S. Attorney's Office for the Northern District of California "because of some
criminal activity," Def.'s Mem., Decl. of Natasha Hudgins, Attorney-Advisor, EOUSA FOIA Staff

("Hudgins Decl.") ¶ 11, ECF No. 15–2, and further that the document was "created for the purpose of handling a civil law enforcement action," *id.* ¶ 13.

Battle Born focuses on challenging DOJ's assertion that Individual X has a protectable privacy interest, arguing first that the document requested would not "disclose any private information," Pl.'s Opp'n at 8, and second, even if some privacy interest does exist, such interest is "outweighed by the tremendous public interest in disclosure," *id.* at 9, and thus the unredacted document should be released. Neither argument is persuasive.

### 1. Privacy Interest

Battle Born first contends that DOJ has failed to invoke a valid privacy interest at all, since "the forfeiture agreement does not disclose any private information," Pl.'s Opp'n at 8, but this argument falls flat for failing to address longstanding precedents to the contrary.

The Supreme Court has held "as a categorical matter that a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy." *Reps. Comm.*, 489 U.S. at 780. In accord with this guidance, the D.C. Circuit has established a rule that "categorically" protects "the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C)" unless they are "necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991). As the D.C. Circuit has since explained, "*SafeCard* 'is one in a long line of FOIA cases holding that disclosure of the *identities* of private citizens mentioned in law enforcement files constitutes an unwarranted invasion of privacy,'" *CREW v. U.S. Dep't of Justice ("CREW I")*, 746 F.3d 1082, 1094 (D.C. Cir. 2014) (emphasis in original) (quoting *Nation Mag., Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995)), based on the "long recognized" fact that "the mention of an individual's

name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation," *Roth*, 642 F.3d at 1174 (internal quotation omitted) (quoting *Schrecker v. U.S. Dep't of Justice ("Schrecker II")*, 349 F.3d 657, 666 (D.C. Cir. 2003)).  This categorical privacy interest applies to FOIA disclosures that "would reveal the identities of individuals who are *subjects*, *witnesses*, or *informants* in law enforcement investigations."  *Nation Mag.*, 71 F.3d at 896 (emphasis supplied).  Moreover, the D.C. Circuit has long held that "the type of law enforcement to which Exemption 7 is addressed includes the enforcement of both civil and criminal federal laws."  *Stern v. FBI*, 737 F.2d 84, 89 (D.C. Cir. 1984) (citing *Pratt v. Webster*, 673 F.2d 408, 419, 420, 420 n.32 (D.C. Cir. 1982)).

The information sought by Battle Born implicates this categorical privacy interest, since disclosure of Individual X's name would reveal, from a law enforcement record, the identity of the person, never publicly revealed before, *see* Hudgins Decl. ¶¶ 16, 18, 19, who was the subject of the law enforcement investigations and enforcement actions relating to the Bitcoin seized from the 1HQ3 address.  The affidavit supplied by the government confirms that Individual X "was the subject of a law enforcement investigation," Def.'s Mem. at 7 (citing Hudgins Decl. ¶ 14), and was the person who stole the Bitcoin in question "from addresses at Silk Road," Hudgins Decl. ¶ 26; *see also id.* ¶ 25.[4]  This individual's name has not been publicly released, *see id.* ¶¶ 16, 18,

---

[4]     Battle Born challenges the veracity of DOJ's claim that Individual X "is accused of theft of several thousand Bitcoins," Hudgins Decl. ¶ 25, citing that "[t]here is no such accusation in the forfeiture agreement" and no charges have been brought, Pl.'s Opp'n at 14 n.4.  To the contrary, DOJ has consistently made this theft accusation against Individual X clear both in public releases and in court.  *See* Dep't of Justice, *United States Files A Civil Action To Forfeit Cryptocurrency Valued At Over One Billion U.S. Dollars* (Nov. 5, 2020), www.justice.gov/usao-ndca/pr/united-states-files-civil-action-forfeit-cryptocurrency-valued-over-one-billion-us ("It was further determined that Individual X had hacked the funds from Silk Road"); *69,370 Bitcoin*, 2022 WL 888655, at *2 ("According to an investigation conducted by the Criminal Investigation Division of the Internal Revenue Service and the U.S. Attorney's Office for the Northern District of California, Individual X was the individual who hacked into Silk Road and moved the cryptocurrency to 1BAD and 1BBq, and subsequently to 1HQ3.").  Notably, Battle Born cites no information to suggest that this accusation is "false[]," other than its own conclusory say so. Pl.'s Opp'n at 14 n.4.

19, even though facts about the investigation and Individual X's status as a subject of the investigation have indisputably been publicly discussed and reported by numerous sources, including DOJ, courts, and media outlets. *See* Pl.'s Opp'n at 1; Def.'s Mem. at 8; *see also, e.g.*, U.S. Dep't of Justice, *United States Files A Civil Action To Forfeit Cryptocurrency Valued At Over One Billion U.S. Dollars* (Nov. 5, 2020), www.justice.gov/usao-ndca/pr/united-states-files-civil-action-forfeit-cryptocurrency-valued-over-one-billion-us [hereinafter *Individual X Press Release*] ("Further investigation of that bitcoin address . . . revealed that the funds were connected to Individual X.  It was further determined that Individual X had hacked the funds from Silk Road."); *69,370 Bitcoin*, 2022 WL 888655, at *2 ("According to an investigation conducted by the Criminal Investigation Division of the Internal Revenue Service and the U.S. Attorney's Office for the Northern District of California, Individual X was the individual who hacked into Silk Road and moved the cryptocurrency to 1BAD and 1BBq, and subsequently to 1HQ3."); Chris Isidore, *Feds Seize $1 Billion in Bitcoins They Say Were Stolen from Silk Road* (Nov. 6, 2020), www.cnn.com/2020/11/06/business/bitcoin-seized-silk-road-ulbricht/index.html ("The filing said the seized bitcoins were stolen from Silk Road in 2013 by a hacker identified only as 'Individual X' in the court document.").  DOJ is correct that these unchallenged facts trigger *SafeCard*'s categorical privacy interest in Individual X's identity. *See* Def.'s Reply Supp. Mot. Summ. J. & Opp'n to Pl.'s Cross Mot. Summ. J. ("Def.'s Reply") at 9, ECF No. 18 ("The identity of Individual X is categorically exempt").[5]

---

[5]      Even without applying the *SafeCard* categorical privacy interest, the existence of a valid privacy interest in withholding Individual X's identity is plain.  The D.C. Circuit has repeatedly held that "individuals have an obvious privacy interest cognizable under Exemption 7(C) in keeping secret the fact that they were subjects of a law enforcement investigation." *Elec. Priv. Info. Ctr. v. U.S. Dep't of Justice*, 18 F.4th 712, 718 (D.C. Cir. 2021) (quoting *CREW v. U.S. Dep't of Justice ("CREW II")*, 854 F.3d 675, 682 (D.C. Cir. 2017) (quoting *Nation Mag.*, 71 F.3d at 894)).  These interests are "substantial" and "undoubtedly significant." *Id.* at 721.  As part of the rationale for this privacy interest, the Circuit has a "longstanding recognition," *id.* at 718, that "disclosing the identity of targets of law-enforcement investigations can subject those identified to embarrassment and potentially more serious reputational harm," *id.* at 719 (quoting *Senate of P.R. v. U.S. Dep't of Justice*, 823 F.2d 574, 588 (D.C. Cir. 1987)), and has further

Battle Born's arguments to the contrary are not persuasive. For instance, Battle Born asserts that, because the Consent Agreement itself "does not say that [Individual] X was investigated," "does not say that he acquired the Bitcoin illegally," and "does [not] even say that he owned or possessed the Bitcoin," disclosure of Individual X's name would not reveal private information at all. Pl.'s Opp'n at 8. At the outset, Battle Born's characterization of the Consent Agreement as saying nothing to suggest "X was investigated," *id.*, is questionable, since the text of this agreement discusses an "above-referenced criminal case," Consent Agreement ¶ 2, ECF No. 15–7, for which the full text is also redacted, *id.* ¶ 1, indicating a link between the defendant named in the redacted criminal case and Individual X. In any event, Battle Born's myopic focus on the text of the Consent Agreement is far too narrow. As the D.C. Circuit has explained, "information in an investigatory file tending to indicate that a named individual has been investigated for suspected criminal activity is, at least as threshold matter, an appropriate subject" for Exemption 7(C). *Fund for Const. Gov't v. Nat'l Archives & Recs. Serv.*, 656 F.2d 856, 863 (D.C. Cir. 1981) (citations omitted).

Even if Battle Born's characterization of the document were correct, Individual X's signature on a civil forfeiture agreement certainly "indicates" the culmination of an enforcement investigation, which is even more substantial than the mere "mention of an individual's name in a law enforcement file" and consequently is an ample basis to give rise to concerns about "comment and speculation" and the "stigmatizing connotation." *Roth*, 642 F.3d at 1174 (quoting *Schrecker II*, 349 F.3d at 666). In applying FOIA exemptions, courts recognize that "individuals have a

---

recognized that the mere "mention of an individual's name in a law enforcement file . . . carries a stigmatizing connotation," *Schrecker II*, 349 F.3d at 666 (citation omitted). As established by DOJ's affiant, disclosing Individual X's name would identify that individual as a subject of a law enforcement investigation, *see supra*, Part III.B.1., and thus plainly implicates the concerns about harms and stigmas recognized by the D.C. Circuit.

strong interest in not being associated unwarrantedly with alleged criminal activity," *Elec. Priv. Info. Ctr.*, 18 F.4th at 718–19 (quoting *Stern*, 737 F.2d at 91–92), based on "the stigma potentially associated with law enforcement investigations," *Stern*, 737 F.2d at 92 (quoting *Bast v. U.S. Dep't of Justice*, 665 F.2d 1251, 1254 (D.C. Cir. 1981)).  The name appearing on the Consent Agreement forfeiting over $1 billion in Bitcoin subject to a law enforcement investigation would "associate" that individual with the investigation, leaving the identified person susceptible to the resulting "rumor and innuendo."  *Fund for Const. Gov't*, 656 F.2d at 863 (quoting *Cong. News Syndicate v. U.S. Dep't of Justice*, 438 F. Supp. 538, 541 (D.D.C. 1977)).  These well-established concerns are sufficient to demonstrate a privacy interest in withholding Individual X's name.

Battle Born also contests Individual X's privacy interest in his or her identity because this individual "did not ask the Government to conceal his identity."  Pl.'s Opp'n at 9; *see also* Pl.'s Reply at 3.  This argument shows a fundamental misapprehension of the privacy interests cognizable under Exemption 7(C).  Under FOIA's nine exemptions, the government has the "power to protect confidentiality" of third parties and is required to "be alert to protect *other interests* in confidentiality *besides those of the Government* which are present in each of the nine exemptions."  *Rural Hous. All. v. U.S. Dep't of Agric.*, 498 F.2d 73, 82 (D.C. Cir. 1974) (emphasis supplied).  Individuals do not have to make affirmative requests that the government protect their privacy by invoking the FOIA exemptions, since the government "is expected to do so" when applicable.  *Ayuda, Inc. v. FTC*, 70 F. Supp. 3d 247, 269 (D.D.C. 2014) (quoting *Hill v. Dep't of Agric.*, 77 F. Supp. 2d 6, 8 (1999), and citing *Lakin Law Firm, PC v. FTC*, 352 F.3d 1122, 1125 (7th Cir. 2003)).  For this reason, individuals do not waive any right to privacy by signing documents containing warnings that the documents might be subject to disclosure pursuant to FOIA, since even such a warning "does not say that the government will not attempt to protect

privacy rights by asserting them" when the government "is expected" to assert such rights.  *Id.*; *Hill*, 77 F. Supp. 2d at 8.  Here, the forfeiture agreement is silent about potential disclosure due to operation of the FOIA, and nothing in the record suggests that Individual X received any warning about such potential FOIA disclosures or that DOJ ever cautioned Individual X about the government making no effort to protect his or her privacy rights.  *See generally* Consent Agreement.  Put another way, nothing in the record supports the step urged by Battle Born of finding that Individual X in some way waived any privacy rights that otherwise attach.  In short, Individual X has a privacy interest in his or her name on the Consent Agreement by operation of the FOIA, without any affirmative obligation to invoke such interest, and the record provides no basis to find any waiver of that interest by Individual X.  The privacy interests that FOIA Exemption 7(c), among others, are designed to protect apply here.[6]

### 2.  Public Interest

"[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'"  *Davis*, 968 F.2d at 1282 (internal quotations omitted) (quoting *Reps. Comm.*, 489 U.S. at 773).  Information sought under FOIA must "shed[] light on an agency's performance of its statutory duties," *Consumers' Checkbook Ctr. for the Study of Servs. v. U.S. Dep't of Health & Hum. Servs.*, 554 F.3d 1046, 1051 (D.C. Cir. 2009) (alteration in original) (quoting *Reps. Comm.*, 489 U.S. at 773), and

---

[6]      Battle Born's citation to *Baltimore Sun v. U.S. Marshals Service*, 131 F. Supp. 2d 725 (D. Md. 2001), as support for denying any privacy interest held by Individual X, *see* Pl.'s Opp'n at 8–9, is wholly inapposite.  In that case, third parties, who purchased from the government property seized by the U.S. Marshals Service, *Balt. Sun*, 131 F. Supp. 2d at 726, were found not to be subject to the *SafeCard* categorical privacy interest because the purchasers were not "subjects, witnesses, or informants" in an investigation, *id.* at 728 (quoting *Nation Mag.*, 71 F.3d at 896), and had no protectable privacy interest because they would suffer no "reputational harm" or a "rational, negative connection" as a result of their legal purchase of previously seized property, *id.* at 729.  In contrast, Individual X has been publicly identified as the subject of a law enforcement investigation and as the individual who stole the Bitcoin in question from the Silk Road, *see supra,* Part III.B.1—information that could easily cause "reputational harm" or lead the public to draw "negative" conclusions about Individual X, *see* Hudgins Decl. ¶¶ 13, 14, 16, 18, 19, 20; Def.'s Reply at 5–7.

"'[i]nformation about private citizens . . . that reveals little or nothing about an agency's own conduct' does not serve a relevant public interest under FOIA," *id.* (omission in original) (quoting *Reps. Comm.*, 489 U.S. at 771).   When Exemption 7(C) is invoked and the requester asserts a public interest "to show that responsible officials acted negligently or otherwise improperly in the performance of their duties," "bare suspicion" will not support disclosure.   *Favish*, 541 U.S. at 174.   Instead, the party seeking the information must present evidence that would lead a "reasonable person" to believe that the alleged government misconduct might have occurred, *id.*, which requires satisfying a "demanding . . . standard," *Blackwell v. FBI*, 646 F.3d 37, 41 (D.C. Cir. 2011).   Furthermore, even after establishing that a cognizable public interest exists, "the party seeking disclosure must show . . . that 'the information [sought] is likely to advance that interest.'" *Elec. Priv. Info. Ctr.*, 18 F.4th at 718 (quoting *Favish*, 541 U.S. at 172).

Battle Born offers three purported public interests in disclosing the identity of Individual X, but none satisfy these requirements.   First, Battle Born claims the public has an interest in learning where the money from the Silk Road went, citing a rhetorical question first posed by the government.   Pl.'s Opp'n at 10 ("[T]he public wants to know 'Where did the money go?'" (quoting DOJ's Nov. 5, 2020, *Individual X Press Release*)).   According to Battle Born, "[t]he public cannot answer that question and properly evaluate what the Government did in its name unless the Government complies with its legal obligation to disclose where the money went."   *Id.*   This argument suffers from multiple fatal flaws, including that Battle Born never explains how revealing Individual X's identity would help answer this question, since the government has already, in public documents, explained where the stolen Bitcoin went: this Bitcoin was hacked from Silk Road, held first at the 1BAD and 1BBq addresses, and later transferred to 1H3Q, where it remained and was later seized by the government.   *See, e.g.*, *69,370 Bitcoin*, 2022 WL 888655,

at *2; Pl.'s Opp'n, Ex. 2, Decl. of Jeremiah Haynie from *69,370 Bitcoin*, No. 20-cv-7811-RS, (N.D. Cal. Sept. 9, 2021), Special Agent, Criminal Investigative Division, Internal Revenue Service ("Haynie Decl.") ¶¶ 6–7, 13–20, 26–28, ECF No. 16-2; Def.'s Mem. at 2 (citations omitted). Publicly identifying Individual X would not alter any of the government's public tracing of the stolen Bitcoin nor reveal any additional information about where this Bitcoin went.[7] Crucially, Battle Born also does not explain how this asserted interest would provide any information about how DOJ is performing its statutory duties. As the Supreme Court has explained, "the basic purpose of the [FOIA is] to open agency action to the light of public scrutiny." *Reps. Comm.*, 489 U.S. at 774 (alteration in original) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976)). Even if revealing Individual X's identity would provide additional information to answer the question "where the money went," the name itself would not give the public any additional information about DOJ's actions or performance, meaning that this purported interest is irrelevant for FOIA purposes.

Battle Born next asserts a public interest in "knowing whether [Individual] X was . . . a federal agent, and whether the Department of Justice agreed to forgo prosecution to conceal potential corruption." Pl.'s Opp'n at 11. This assertion of corruption is intriguing but nonetheless too speculative to meet the "demanding . . . standard" required when claiming a public interest in uncovering alleged government impropriety. *Blackwell*, 646 F.3d at 41. As support for this allegation, Battle Born points to the prosecution of two former federal law enforcement agents who stole Bitcoin from Silk Road, as well as a notice from the government that the forfeiture action

---

[7]    While 940.38 Bitcoin were apparently not transferred from the 1BAD and 1BBq addresses to 1H3Q, indicating that the government, at least in the public disclosures relating to Individual X, has not accounted for all 70,411.46 Bitcoin originally stolen from Silk Road and transferred to 1BAD and 1BBq, *see* Haynie Decl. ¶ 16 (showing chart of stolen Bitcoin transfers); Def.'s Mem. at 2 (acknowledging not all of the stolen Bitcoin was transferred to 1H3Q), Battle Born has not explained how simply revealing Individual X's identity would elucidate, beyond the information already provided by the government, where this missing stolen 940.38 Bitcoin has gone.

against Individual X was related to these two prosecutions. Pl.'s Opp'n at 11 (citing Notice, *United States v. Force IV*, No. 3:15-r-00319-RS (N.D. Cal. Nov. 16, 2020), ECF No. 182 [hereinafter Related Case Notice]; U.S. Dep't of Justice, *Former DEA Agent Sentenced for Extortion, Money Laundering and Obstruction Related to Silk Road Investigation* (Oct. 19, 2015), www.justice.gov/opa/pr/former-dea-agent-sentenced-extortion-money-laundering-and-obstruction-related-silk-road; U.S. Dep't of Justice, *Former Secret Service Agent Sentenced in Scheme Related to Silk Road Investigation* (Nov. 7, 2017), www.justice.gov/opa/pr/former-secret-service-agent-sentenced-scheme-related-silk-road-investigation). Battle Born does not explain, however, why the government's *public* prosecution of two corrupt former federal agents, *see* Pl.'s Opp'n at 11 (acknowledging that both were prosecuted "amid considerable publicity"), supports the inference that the government is *covering up* corruption. Furthermore, as Battle Born acknowledges, the notice of related cases explained that the cases were related because the "various means of obtaining funds from Silk Road" were "similar," and the crimes were carried out during "the same period." *Id.* at 12–13 (citing Related Case Notice). Nothing about this disclosure supports an inference that the government declined to prosecute Individual X to cover up corruption. "These allegations are, at worst, salacious, and at best, speculative," *Am. First Legal Found. v. FBI*, No. 23-cv-2172 (BAH), 2024 WL 4607496, at *12 (D.D.C. Oct. 29, 2024), and they fail to provide any evidence that could lead a reasonable person to believe the alleged misconduct might have happened, meaning these allegations, too, fail to raise a public interest cognizable under FOIA.

Finally, Battle Born argues that the public has an interest in learning whether the government "allowed suspected criminals to purchase leniency by agreeing to forfeit Silk Road Bitcoin worth billions of dollars." Pl.'s Opp'n at 13; *see also* Pl.'s Reply at 4. This is another

serious allegation of government corruption that, if adequately supported might very well overcome an otherwise legitimate privacy interest. Yet, despite claiming the government engaged in "a pattern of granting leniency to persons who forfeit valuable Silk Road bitcoins," Pl.'s Reply at 4, Battle Born cites only one other case, regarding James Zhong, as support, *id.*; Pl.'s Opp'n at 13–14. Whether one other case makes a "pattern" is dubious, but, in any event, Battle Born provides no information to support the allegation that Zhong's charges or sentence were "unusually lenient," Pl.'s Opp'n at 14, compared to other persons prosecuted for similar offense conduct in similar circumstances.

In sum, although lodging serious corruption claims against the government to invoke the public interest, Battle Born's briefing is light on facts and evidence supporting these claims, thus falling well short of satisfying the "demanding *Favish* standard," *Blackwell*, 646 F.3d at 41, for claiming government impropriety as a public interest under FOIA.

### 3. Balancing

Under Exemption 7(C), the "privacy interests that would be compromised by disclosure" are balanced "against the public interest in release of the requested information" to determine whether any invasion of privacy from disclosure would be "unwarranted." *Davis*, 968 F.2d at 1281 (citing *Reps. Comm.*, 489 U.S. at 762); *see also Schrecker I*, 254 F.3d at 166 (citing *Reps. Comm.*, 489 U.S. 749); 5 U.S.C. § 552(b)(7)(C). In this balancing, the FOIA requester "bears the burden of showing (1) that 'the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake,'" and (2) that "the information [it] seeks 'is likely to advance that interest.'" *Roth*, 642 F.3d at 1174–75 (quoting *Favish*, 541 U.S. at 172).

Here, the balance strongly favors nondisclosure. Individual X's privacy interests are strong, under application of either the *SafeCard* categorical approach or a case-by-case approach. *See supra*, Part III.B.1, n.5. Despite alleging the possibility of serious government impropriety in covering up official corruption, Pl.'s Opp'n at 11–13, and/or engaging in a "pattern" of offering "unusually lenient" deals to defendants in exchange for Bitcoin forfeitures, *id.* at 13–14, Battle Born has offered little and certainly no persuasive evidence that would lead a reasonable person to believe either instance of alleged misconduct might have occurred, much less offered "compelling evidence" that DOJ was at any time engaged in "*illegal* activity," as is required by *SafeCard*, 926 F.2d at 1205–06 (emphasis supplied). The allegations of government impropriety amount to little more than conclusory allegations and speculation, and "[o]ur caselaw is clear that 'the requester must establish more than a bare suspicion in order to obtain disclosure.'" *Kowal*, 107 F.4th at 1031 (quoting *CREW I*, 746 F.3d at 1094 (cleaned up), and citing *Roth*, 642 F.3d at 1178). Nor has Battle Born demonstrated that the requested disclosure of the identity of Individual X would shed light on such alleged government misconduct, given the ample information already known about this individual's theft of Bitcoin. In the end, this requested disclosure fails to satisfy the standard of being "necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity." *SafeCard*, 926 F.2d at 1206. "Where there is no identifiable public interest, the privacy interest protected by Exemption 7(C) prevails because 'something, even a modest privacy interest, outweighs nothing every time.'" *Kowal*, 107 F.4th at 1031 (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989)).

Accordingly, on balance, the government has properly invoked Exemption 7(C) to withhold Individual X's identity from public disclosure.

**IV.    CONCLUSION**

DOJ has demonstrated, through sworn declarations and supporting arguments, that withholding Individual X's name from disclosure, pursuant to FOIA Exemption 7(C), 5 U.S.C. §§ 552(7)(C), is proper.  Summary judgment is therefore granted to DOJ, and Battle Born's cross-motion for summary judgment is denied.

An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  December 30, 2024

_____
**BERYL A. HOWELL**
United States District Judge